UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVOX PRODUCTIONS LLC, a Delaware limited liability company,<br><br>  Plaintiff,<br><br>  v.<br><br>AOL INC., a Delaware corporation; OATH INC., a Delaware corporation; and VERIZON MEDIA INC., a Delaware corporation; and DOES 1-10,<br><br>  Defendants. | Case No. 2:20-cv-02907-JWH-JEMx<br><br>**ORDER ON MOTION OF DEFENDANTS TO DISMISS THE SECOND CAUSE OF ACTION FOR TRADEMARK INFRINGEMENT [ECF No. 26]** |

## I. INTRODUCTION

Before the Court is the motion of Defendants AOL Inc., Oath Inc., and Verizon Media Inc. to dismiss the trademark claim of Plaintiff Evox Productions LLC.[1]  The Court finds that the Motion is appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  For the reasons explained below, the Court **GRANTS** the Motion and **DISMISSES** Evox's second claim for relief **with leave to amend**.

## II. BACKGROUND

As relevant to the Motion, the First Amend Complaint[2] alleges the following:

Evox has been a pioneer in the automobile photography industry.[3]  For roughly 20 years, Evox "has meticulously catalogued the highest quality still images, interactive images, and videos of several thousand vehicle makes and models."[4]  Evox uses proprietary methods to capture each image, and it "protects each image in its library with a unique copyright registration."[5]  In addition, Evox owns trademarks, which are registered with the United States Patent and Trademark Office, "to identify and distinguish" its images.[6]  Evox's images "are widely regarded as the highest-quality digital automotive images in the industry."[7]

---

[1]  Mot. of Defs. to Dismiss the Second Cause of Action for Trademark Infringement (the "Motion") [ECF No. 26].
[2]  First Am. Compl. (the "FAC") [ECF No. 15].
[3]  *Id.* at ¶ 34.
[4]  *Id.*
[5]  *Id.* at ¶ 35.
[6]  *Id.* at ¶ 48.
[7]  *Id.* at ¶ 43.

"In 2014, E[vox] licensed thousands of its images to AOL for use on one of AOL's web properties known as 'Autoblog.'"[8] "Autoblog provides shopping tools and research pages where consumers can search for automobile-related information."[9] AOL, including Autoblog, now operates "under the umbrella" of Verizon.[10] AOL is the predecessor-in-interest to defendant Oath, and defendant Verizon is the "successor-in-interest to defendants AOL and O[ath]."[11]

AOL terminated the license agreement in 2017, but Evox discovered later that year "that AOL was still using or making available 281,721 Evox images without license or authorization."[12] Each of these images was stamped with Evox's trademarks.[13] Evox alleges upon information and belief that "Defendants' unauthorized use of Evox's Trademarks was and is likely to cause confusion, mistake, or deception among the entities and individuals that deal with Defendants and E[vox]."[14]

On March 27, 2020, Evox filed its Complaint, commencing this action.[15] On April 22, 2020, Evox filed its FAC, which asserts two claims for relief; one for copyright infringement and one for trademark infringement. On June 11, 2020, Defendants filed the instant Motion, which seeks dismissal of the trademark claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. On September 29, 2020, this case was transferred to this Court.[16]

---

[8] *Id.* at ¶ 37.
[9] *Id.*
[10] *Id.* at ¶ 39.
[11] *Id.* at ¶ 5.
[12] *Id.* at ¶ 38.
[13] *Id.* at ¶ 50.
[14] *Id.* at ¶ 72.
[15] Compl. [ECF No. 1].
[16] *See* Order of the Chief Judge (#20-141) [ECF No. 37].

## III. LEGAL STANDARDS

A defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive such a motion, the complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint need not contain "detailed factual allegations," but it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Lanham Act "creates a federal civil cause of action for unauthorized use of a registered trademark." *Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1248 (9th Cir. 2017). "The Lanham Act's provision concerning ordinary trademark infringement, known as section 32, defines infringement in relevant part as follows:"

> Any person who shall, without the consent of the registrant—
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for

|   |   |
|---|---|
| 1 | sale, distribution, or advertising of goods or services on or in |
| 2 | connection with which such use is likely to cause confusion, |
| 3 | or to cause mistake, or to deceive, |
| 4 | shall be liable in a civil action by the registrant for the remedies |
| 5 | hereinafter provided. |

*Id.* at 1248-49 (quoting 15 U.S.C. § 1114(1)).

## IV.  DISCUSSION

### A.  *Dastar* and *Slep-Tone*

Defendants argue that *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), and its progeny foreclose Evox's trademark claim.  For the reasons explained below, the Court agrees.

The facts in *Dastar* merit review, as they illuminate Defendants' argument.  In 1948, General Dwight D. Eisenhower wrote a book, *Crusade in Europe*, relating his personal experiences as the Supreme Allied Commander in Northern Europe during World War II.  *Dastar*, 539 U.S. at 25.  Doubleday, the publisher and owner of the copyright in *Crusade in Europe*, licensed the television rights in the work to an affiliate of Twentieth Century Fox.  *Id.*  The Fox affiliate created a 26-episode television series based upon the book.  *Id.* at 25-26.  That television series first aired in 1949.  *Id.* at 26.  The copyright on the book was renewed, but the copyright on the television series was not, and the television series entered the public domain.  *Id.* at 26.

Years later, SFM Entertainment and New Line Home Video acquired the television rights in the book.  *Id.*  SFM restored the series from the original negatives and packaged the series on videotape, and New Line distributed it.  *Id.*  Using beta cam tapes of the ***original*** (Fox) version of the series, Dastar edited the tapes, created new packaging, and sold the series through various retailers.  *Id.* at 26-27.  Dastar sold the series as its own product, making no reference to the original Fox series.  *Id.* at 27.  Fox, SFM, and New Line filed a lawsuit,

alleging that Dastar's video series infringed the copyright in the book "and, thus, their exclusive television rights in the book." *Id.* The plaintiffs also alleged that Dastar's sale of the series without proper credit "constitute[d] 'reverse passing of' in violation of § 43(a) of the Lanham Act, 60 Stat. 441, 15 U.S.C. § 1125(a) . . . ." *Dastar*, 539 U.S. at 27.

The Supreme Court held that "Dastar was the 'origin' of the products it sold as its own" and that the plaintiffs therefore could not "prevail on their Lanham Act claim." *Id.* at 38. As the Supreme Court explained,

> In sum, reading the phrase "origin of goods" in the Lanham Act in accordance with the Act's common-law foundations (which were not designed to protect originality or creativity), and in light of the copyright and patent laws (which were), we conclude that the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods. *Cf.* 17 U.S.C. § 202 (distinguishing between a copyrighted work and "any material object in which the work is embodied"). To hold otherwise would be akin to finding that § 43(a) created a species of perpetual patent and copyright, which Congress may not do. *See Eldred v. Ashcroft*, 537 U.S. 186, 208, 123 S. Ct. 769, 154 L. Ed. 2d 683 (2003).

*Dastar*, 539 U.S. at 37. Thus, allegations that a defendant copied without authorization an "idea, concept, or communication" are insufficient to avoid dismissal of a claim for reverse passing off under the Lanham Act; rather, such claims are the domain of copyright law. *See id.*

In *Slep-Tone*, the Ninth Circuit applied *Dastar* in the context of allegedly unauthorized copying of karaoke compact disks. Slep-Tone released compact disks containing karaoke music and accompanying graphics under the trademark "Sound Choice." *Slep-Tone*, 845 F.3d at 1248. Slep-Tone required users to

make no more than one digital copy of the content of the disks. *Id.* Slep-Tone filed an action for trademark infringement, alleging that the defendant karaoke business used unauthorized copies of Slep-Tone's CDs. *Id.* The Ninth Circuit rejected Slep-Tone's trademark claim. Slep-Tone's trademark theory was that because the copied files displayed Slep-Tone's "trademarks and trade dress when performed, consumers will be confused about their origin—believing that the tracks originated with [Slep-Tone], rather than with" the defendant karaoke business. *Id.* at 1249. But, the Ninth Circuit explained, "this theory does not involve consumer confusion about the source of an appropriate 'good,' as that concept has been defined by the Supreme Court." *Id.* Rather, "the 'good' whose 'origin' is material for purposes of a trademark infringement claim is the 'tangible product sold in the marketplace' rather than the creative content of that product." *Id.* at 1250 (quoting *Phx. Entm't Partners v. Rumsey*, 829 F.3d 817, 828 (7th Cir. 2016)). Further, consumers who see performances of the karaoke tracks would not be confused about "the source of the tangible good sold in the marketplace" because consumers were not even aware of the unauthorized digital copies. *Id.* "When the claim is more accurately conceived of as attacking unauthorized copying, *Dastar* requires us to avoid recognizing a 'species of mutant copyright law' by making such claims cognizable under the Lanham Act." *Id.* (quoting *Dastar*, 539 U.S. at 34).

Here, Defendants argue that *Dastar* and *Slep-Tone* compel the conclusion that Evox cannot allege a trademark claim as a matter of law.[17] Indeed, this reasoning was applied in a recent case in this district—in which Evox is also the plaintiff—involving nearly identical facts. *See Evox Prods., LLC v. Verizon Media Inc.*, No. CV 20-2852-CBM-(JEMx), 2020 WL 5894564 (C.D. Cal. Aug. 19, 2020). There, the district court explained its reasoning as follows:

---

[17] Motion at 7:23-14:2.

Plaintiff's trademark infringement claim is based on Defendants' alleged unauthorized display on its Tumblr website of copies of Plaintiff's photographs which included Plaintiff's trademarks on the images. Thus, Plaintiff's trademark infringement claim is "more accurately conceived of as attacking unauthorized copying" of Plaintiff's copyrighted photographs containing Plaintiff's marks, which is not a cognizable Lanham Act claim under *Dastar* and *Slep-Tone*. *Slep-Tone*, 845 F.3d at 1250 (citing *Dastar*, 539 U.S. at 37). As in *Slep-Tone*, the good at issue is the digital file of Plaintiff's copyrighted photographs/images, which the Complaint does not allege consumers see. Furthermore, like in *Slep-Tone*, here the Complaint does not allege Defendants are in the business of selling or distributing the digital files/images. Therefore, "[i]f there is any confusion, it does not concern the source of the goods, as the Lanham Act requires," because consumers "never see the digital files [of Plaintiff's images]" and "Defendants neither sell them nor make representations about their source medium." *Id.* As in *Slep-Tone*, here Plaintiff's Lanham Act claim is based on Defendants' alleged "unauthorized use of the *content* of Plaintiff's [digital files of the photographs], which *Dastar* precludes as a trademark claim." *Id.*

*Evox*, 2020 WL 5894564, at *2 (alterations in original; footnote and citation omitted).

Evox responds that the Supreme Court's *Dastar* decision is inapposite because it involved § 43 of the Lanham Act (15 U.S.C. § 1125), whereas here Evox invokes a different provision within the Lanham Act—§ 32 (15 U.S.C. § 1114).[18] In *Slep-Tone*, however, the Ninth Circuit applied *Dastar*'s reasoning

---

[18] Opp'n to Motion (the "Opposition") [ECF No. 29] 1:21-23 & 5:21-7:4.

to § 32 of the Lanham Act. *See Slep-Tone*, 845 F.3d at 1249. Indeed, *Slep-Tone* expressly addresses this issue, stating, "although the Supreme Court [in *Dastar*] was interpreting the 'unfair competition' provision in section 43 of the Lanham Act, '"the same standard" applies to both registered [*i.e.*, section 32] and unregistered [*i.e.*, section 43] trademarks.'" *Id.* (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204 n.3 (9th Cir. 2000)).

Evox also argues that *Dastar* and *Slep-Tone* do not apply because Evox "was the producer of the relevant good with which consumers routinely interacted."[19] *Slep-Tone*, however, holds that "'the "good" whose "origin" is material for purposes of a trademark infringement claim is the "tangible product sold in the marketplace" rather than the creative content of that product.'" *Slep-Tone*, 845 F.3d at 1250 (quoting *Rumsey*, 829 F.3d at 828). This holding does not depend upon whether the plaintiff produced the "creative content," and, as Defendants note, the cases that Evox cites in support of this argument pre-date *Slep-Tone*.[20] Evox further contends that *Slep-Tone* is distinguishable because Evox alleges that Defendants distributed its copyrighted images, which contained its trademarks.[21] But Evox has not alleged facts to support a claim that Defendants distributed a tangible good rather than making unauthorized copies of content.[22] *See id.*

Evox also maintains that the display of the trademark at issue in *Slep-Tone* (and other karaoke trademark cases) "was ancillary to the defendants' purpose," whereas "the very purpose of Defendants' use of E[vox]'s [i]mages was to attract consumers uniquely interested in viewing automotive stock

---

[19] *Id.* at 9:17-18.
[20] *See id.* at 9:21-10:14.
[21] *Id.* at 10:15-11:27.
[22] *See generally* FAC.

-9-

imagery."[23] However, Evox does not actually allege that the visitors to Autoblog were "uniquely" interested in "automotive stock imagery"; rather, Evox more generally alleges that Autoblog is an automotive news and shopping site and that Evox's images were "intended to attract users to Defendants' internet properties."[24] Moreover, the consumers in *Slep-Tone* were presumably "uniquely" interested in performing or (for whatever reason) listening to karaoke, just as the consumers in *Dastar* were presumably "uniquely" interested in World War II documentaries (a far more laudable pastime). Finally, Evox argues that it should not be barred from protecting the goodwill associated with its trademark.[25] While this may be true, the Court is bound by *Dastar* and *Slep-Tone*, and Evox must state a claim before it can be entitled to relief. Accordingly, the Court **GRANTS** Defendants' Motion.

### B. Leave to Amend

The policy of granting leave freely is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir.2001)). "Leave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.2000)). On this record, the Court cannot conclude that it would be impossible for Evox to cure the deficiencies in its pleading. Accordingly, the Court grants Evox leave to amend its trademark claim.

### V. CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

---

[23] Opposition at 12:21-27.
[24] *See* FAC ¶¶ 20-22.
[25] Opposition at 14:1-15:5.

    1.      Defendants' Motion is **GRANTED**. Count Two of the FAC, for trademark infringement, is **DISMISSED with leave to amend**.

    2.      If Evox chooses to file a Second Amended Complaint, its deadline to do so is 14 days from the date of this Order.

**IT IS SO ORDERED.**

Dated: March 1, 2021

                                       John W. Holcomb
                                       UNITED STATES DISTRICT JUDGE