SCOTT A. EDELMAN, SBN 116927
  sedelman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East
Suite 4000
Los Angeles, CA  90067-3026
Telephone:   310.552.8500
Facsimile:   310.551.8741

PERLETTE MICHÈLE JURA, SBN 242332
  pjura@gibsondunn.com
ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
SHAUN A. MATHUR, SBN 311029
  smathur@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:   213.229.7000
Facsimile:   213.229.7520

Attorneys for Defendants AOL INC., OATH
INC., and VERIZON MEDIA INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| EVOX PRODUCTIONS LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>AOL INC., a Delaware corporation; OATH INC., a Delaware corporation; VERIZON MEDIA INC., a Delaware corporation; and DOES 1-10,<br><br>Defendants. | CASE NO. 2:20-cv-02907-JWH-JEM<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ILISSA SAMPLIN; DECLARATION OF TOM PITTS; DECLARATION OF RAY DORMAN IN SUPPORT THEREOF**<br><br>**HEARING:**<br>Date:      July 23, 2021<br>Time:      9:00 a.m.<br>Judge:    John W. Holcomb |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on July 23, 2021, at 9:00 a.m. or as soon thereafter as this matter may be heard before the Honorable John W. Holcomb, in Courtroom 2 of the George E. Brown, Jr. Federal Building and United States Courthouse, located at 3470 12th St., Riverside, CA 92501, Defendants AOL Inc., Oath Inc., and Verizon Media Inc. ("Defendants") will and hereby do move this Court under Federal Rule of Civil Procedure 56 for an order entering summary judgment in their favor on the first cause of action for copyright infringement and second cause of action for trademark infringement asserted by Plaintiff Evox Productions, LLC ("Evox").

**<u>Copyright Infringement Claim</u>**.  Evox's claim for copyright infringement fails as a matter of law.  Evox contends that Defendants displayed and distributed its copyrighted images to the public after the parties' license agreement terminated in February 2017.  Under the Copyright Act, a copyrighted image is "displayed" when "a computer owner . . . stores an image as electronic information *and serves* that electronic information directly to [a] user," and an image is "distributed" when it is actually disseminated to a user.  *Perfect 10, Inc. v. Amazon.com Inc.*, 508 F.3d 1146, 1159 1162 (9th Cir. 2007) (emphasis added).  And a copyrighted image is displayed or distributed to "the public" when it has been "transmit[ted] to a substantial number of people" "who lack any prior relationship to the work."  *Am. Broad. Cos. v. Aereo, Inc.*, 573 U.S. 431, 448–50 (2014).

Evox has no evidence that Defendants served, disseminated, or transmitted a single Evox image to a substantial number of people after the parties' license terminated in February 2017.  Evox's 30(b)(6) witness admitted that Evox does not have "any evidence" that "a single individual"—let alone a substantial number of people—"saw any of the Evox images on [AOL's] Autoblog [website] after the license terminated." Defendants' Statement of Undisputed Facts ("SUF") 72.  Evox's expert also conceded that he had not "seen evidence that some person out there in the public . . . used or accessed an [Evox] image" through AOL's server after February 2017.  SUF 102.

1    Recognizing that it lacks evidence of actual service of images, Evox insists that
2    Defendants committed copyright infringement when "AOL made [Evox] images
3    available to the public" after February 2017 by continuing to host the images on its
4    server.  SUF 69.  But the Copyright Act does not "support[]," and the Ninth Circuit has
5    never "embraced," the "mak[ing] available" theory that Evox relies on in this case. *VHT,*
6    *Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 736 (9th Cir. 2019).  Indeed, Judge Marshall
7    recently held in another case filed by Evox that the "making available" theory "fails as
8    a matter of law."  Samplin Decl. Ex. 25, at 4–5.  And in any event, the parties' license
9    expressly authorized Defendants to "store [Evox's] Images internally after termination."
10   SUF 5.  Accordingly, Evox's claim for copyright infringement fails as a matter of law.

11       **Trademark Infringement**.  Evox's claim for trademark infringement similarly
12   fails as a matter of law because it is premised on a theory of infringement that is not
13   cognizable under the Lanham Act.  Under binding Supreme Court and Ninth Circuit
14   precedent, a trademark infringement claim may not be maintained where the asserted
15   mark is embedded within the content of the trademark holder's goods, and the defendant
16   allegedly uses the content without authorization. *See Dastar Corp. v. Twentieth Century*
17   *Fox Film Corp.*, 539 U.S. 23, 34 (2003); *Slep-Tone Entmt. Corp. v. Wired for Sound*
18   *Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1249–50 (9th Cir. 2017) (per curiam).
19   Following these precedents, this Court concluded that the theory of trademark
20   infringement alleged in Evox's First Amended Complaint fails as a matter of law
21   because it is "based on Defendants' alleged unauthorized use of the *content* of [Evox's]
22   digital files of the photographs, which *Dastar* precludes as a trademark claim."  Dkt. 46
23   at 8.  Despite this Court's ruling, the amended iteration of Evox's trademark claim in its
24   Second Amended Complaint rests on the *exact same* theory—and thus summary
25   judgment is warranted for all the reasons articulated in this Court's prior order.
26   Moreover, summary judgment is warranted for the independent reason that both fact and
27   expert discovery have now concluded, and Evox has not even attempted to prove
28   likelihood of consumer confusion—the "core element of trademark infringement."

1  *Multi Time Machine, Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 933 (9th Cir. 2015).

2      Because Evox has no evidence to support critical elements of its claims, the Court

3  should enter summary judgment in Defendants' favor. *See Celotex Corp. v. Catrett*, 477

4  U.S. 317, 322–24 (1986).

5      This Motion is based on this Notice of Motion and Motion, the attached

6  Memorandum of Points and Authorities, all other pleadings and papers on file in this

7  action, any oral argument that may be heard by the Court, and any other matters that the

8  Court may deem appropriate.

9      Pursuant to Local Rule 7-3, this Motion is made following the conference of

10  counsel, which took place on June 18, 2021.  During that conference, the parties were

11  unable to resolve the issues presented in this Motion.

12

13  DATED:  June 24, 2021

14                              SCOTT A. EDELMAN
                                PERLETTE MICHELE JURA
15                              ILISSA SAMPLIN
                                SHAUN A. MATHUR
16                              GIBSON, DUNN & CRUTCHER LLP

17
                                By: */s/ Scott A. Edelman*
18                                       Scott A. Edelman

19                              Attorneys for Defendants AOL INC., OATH
                                INC., and VERIZON MEDIA INC.
20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ..................................................................................... 1

II.     FACTUAL BACKGROUND .................................................................... 2

        A.    The Parties Execute A License Authorizing Use Of Evox's Images ........ 2

        B.    AOL Terminates The License And Removes Evox's Images ................... 4

        C.    Evox Investigates Whether Its Images Are Available On Autoblog ........ 4

        D.    Evox Waits More Than One Year To Inform Defendants That Images May Have Been Available On Autoblog After License Termination ............................................................................................... 7

        E.    Evox Files This Lawsuit For Copyright And Trademark Infringement ..................................................................................... 8

III.    LEGAL STANDARD ............................................................................... 8

IV.     ARGUMENT ............................................................................................ 9

        A.    Evox's Copyright Infringement Claim Fails ............................................ 9

              1.    There Is No Evidence Of Service To The Public After Termination ..................................................................... 9

              2.    Evox's "Making Available" Theory Fails As A Matter Of Law ................................................................................. 14

              3.    The License Expressly Authorized Defendants' Alleged Conduct ....................................................................... 16

        B.    Evox's Enhanced Statutory Damages Claim For Willful Infringement Fails ..................................................................... 19

        C.    Evox's Trademark Infringement Claim Fails .......................................... 22

              1.    Evox's Trademark Claim Is Foreclosed By *Dastar* And Its Progeny ..................................................................... 22

              2.    Evox Has No Evidence That Consumers Are Likely To Be Confused ..................................................................... 24

V.      CONCLUSION ...................................................................................... 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Am. Broad. Cos. v. Aereo,*
573 U.S. 431 (2014)..........................................................2, 10, 12, 13, 17

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986).................................................................8

*Annabooks, LLC v. Issuu, Inc.,*
2020 WL 6873646 (N.D. Cal. Sept. 24, 2020)......................................9, 15

*Atl. Recording Corp. v. Howell,*
554 F. Supp. 2d 976 (D. Ariz. 2008) ...............................................15

*Automation By Design, Inc. v. Raybestos Prods. Co.,*
463 F.3d 749 (7th Cir. 2006) .......................................................12

*Baisden v. I'm Ready Prods., Inc.,*
693 F.3d 491 (5th Cir. 2012) .......................................................16

*Barcamerica Int'l USA Tr. v. Tyfield Imps., Inc.,*
289 F.3d 589 (9th Cir. 2002) .......................................................24

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.,*
213 F.3d 474 (9th Cir. 2000) .........................................................8

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)..........................................................2, 9, 10, 14

*CoStar Grp., Inc. v. LoopNet, Inc.,*
373 F.3d 544 (4th Cir. 2004) .......................................................18

*Danjaq LLC v. Sony Corp.,*
263 F.3d 942 (9th Cir. 2001) .......................................................19

*Dastar Corp. v. Twentieth Century Fox Film Corp.,*
539 U.S. 23 (2003)............................................................2, 22, 23

*Envtl. Staffing Acquisition Corp. v. B & R Constr. Mgmt.,*
283 Va. 787 (2012) .............................................................16, 17

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:20-CV-02907-JWH(JEMX)

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Erickson Prods., Inc. v. Kast*,
    921 F.3d 822 (9th Cir. 2019) ...................................................................... 21

*Evox Prods. LLC v. Kayak Software Corp.*,
    2017 WL 5634856 (C.D. Cal. Jan. 20, 2017) ........................................ 3, 22

*Fox Broad. Co. v. Dish Network LLC*,
    160 F. Supp. 3d 1139 (C.D. Cal. 2015) .................................................... 10

*Fox Broad. Co. v. Dish Network LLC*,
    747 F.3d 1060 (9th Cir. 2014) .................................................................... 18

*Luvdarts, LLC v. AT&T Mobility, LLC*,
    710 F.3d 1068 (9th Cir. 2013) .................................................................... 19

*Multi Time Machine, Inc. v. Amazon.com, Inc.*,
    804 F.3d 930 (9th Cir. 2015) ...................................................................... 24

*Murray v. Cable Nat'l Broad. Co.*,
    86 F.3d 858 (9th Cir. 1996) ........................................................................ 24

*In re Napster, Inc. Copyright Litig.*,
    377 F. Supp. 2d 796 (N.D. Cal. 2005) ...................................................... 15

*Network Automation, Inc. v. Adv. Sys. Concepts, Inc.*,
    638 F.3d 1137 (9th Cir. 2011) ...................................................................... 2

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
    210 F.3d 1099 (9th Cir. 2000) ...................................................................... 9

*Novelty Textile, Inc. v. Windsor Fashions, Inc.*,
    2013 WL 12114062 (C.D. Cal. Aug. 21, 2013) ........................................ 21

*Oracle USA, Inc. v. Rimini St., Inc.*,
    879 F.3d 948 (9th Cir. 2018) ...................................................................... 16

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ......................................2, 9, 10, 14, 18, 22

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) .................................................................. 9, 18

Gibson, Dunn &
Crutcher LLP

iii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Phoenix Ent. Partners, LLC v. Casey Road Food & Beverage, LLC*,
    728 F. App'x 910 (11th Cir. 2018) ...................................................... 23, 24

*Phoenix Ent. Partners v. Rumsey*,
    829 F.3d 817 (7th Cir. 2016) ............................................................. 22, 24

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
    907 F. Supp. 1361 (N.D. Cal. 1995) ......................................................... 18

*S.O.S., Inc. v. Payday, Inc.*,
    886 F.2d 1081 (9th Cir. 1989) ................................................................. 16

*SA Music, LLC v. Amazon.com, Inc.*,
    2020 WL 3128534 (W.D. Wash. June 12, 2020) ....................................... 15

*Slep-Tone Ent. Corp. v. Wired for Sound Karaoke & DJ Services, LLC*,
    845 F.3d 1246 (9th Cir. 2017) ................................................................. 23

*Spinelli v. Nat'l Football League*,
    903 F.3d 185 (2d Cir. 2018) .................................................................... 16

*Taylor Holland LLC v. MVMT Watches, Inc.*,
    2016 WL 6892097 (C.D. Cal. Aug. 11, 2016) .......................................... 19

*Toho Co. v. Sears, Roebuck & Co.*,
    645 F.2d 788 (9th Cir. 1996) ................................................................... 24

*VHT, Inc. v. Zillow Grp., Inc.*,
    918 F.3d 723 (9th Cir. 2019) ................................ 2, 10, 14, 15, 16, 17, 18, 19, 21

*Yesh Music, LLC v. Amazon.com, Inc.*,
    249 F. Supp. 3d 645 (E.D.N.Y. 2017) ...................................................... 12

*Zuffa, LLC v. Latham*,
    2020 WL 4458920 (N.D. Cal. Feb. 26, 2020) ........................................... 13

**STATUTES**

17 U.S.C. § 106 ............................................................................................ 17

Cal. Civ. Code § 2304 .................................................................................. 13

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:20-CV-02907-JWH(JEMX)

# TABLE OF AUTHORITIES
(continued)

Page(s)

**RULES**

Fed. R. Civ. P. 56(a) ......................................................................................... 8

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:20-CV-02907-JWH(JEMX)

# I.    INTRODUCTION

Plaintiff Evox Productions, LLC ("Evox"), an automobile image company, granted a license to AOL Inc. and its affiliates (collectively, "Defendants") to use Evox's images.  During the term of the license, Defendants stored the images on AOL's origin host server and used the images on a portion of AOL's Autoblog website.  Defendants ultimately decided to exercise their contractual right to terminate the license, and thus in December 2016 took steps to prevent Evox images from appearing on the Autoblog website.  Defendants provided Evox notice of termination effective February 2017, and permanently deleted all of Evox's images from AOL's server in June 2017.

Shortly before Defendants deleted all Evox images from AOL's server, Evox commenced an investigation to determine how many of its images remained "available" on AOL's server after the license terminated.  Evox discovered that even though AOL had taken steps to prevent Evox images from appearing on the Autoblog website, Evox images remained on AOL's server.  Evox did not find that any members of the public had actually accessed and viewed any Evox images from AOL's server.  Nonetheless, Evox began searching for counsel willing to pursue a claim for copyright infringement under a "making available" theory.  In the interim, Evox did not inform Defendants that its images remained available on AOL's server, even though the license required Evox to promptly inform Defendants of a potential claim.  Nor did Evox exercise its contractual right to examine and audit AOL's records, even though AOL's access logs would have shown whether or not Internet users had actually accessed and viewed Evox images on AOL's server after the license terminated.  Instead, Evox waited more than a year to send Defendants a demand letter for over $200,000,000, even though it would have cost Defendants less than $500,000 to license the images at issue.  Evox then filed this lawsuit for copyright and trademark infringement.  Its claims fail as a matter of law.

Evox's copyright claim fails because there is no evidence that Defendants served a single Evox image to a substantial number of people after February 2017.  Under Supreme Court and Ninth Circuit precedent, a website operator does not infringe the

"public display" and "public distribution" rights unless it actually "serves" or "transmit[s]" an image, *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159, 1162 (9th Cir. 2007), to a "substantial number of people" "who lack any prior relationship" to the image, *Am. Broad. Cos. v. Aereo*, 573 U.S. 431, 448–50 (2014). Evox admits it does not have "any evidence" that even "a single individual . . . saw any of the Evox images" through AOL's server after the license terminated in February 2017. SUF 72. Evox nonetheless insists that Defendants committed copyright infringement when "AOL made [Evox] images available to the public" after the license terminated. SUF 69. But the Copyright Act does not "support[]," and the Ninth Circuit has never "embraced," the "mak[ing] available" theory that Evox relies on in this case. *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 736 (9th Cir. 2019). Indeed, in another case filed by Evox "involving nearly identical facts," Dkt. 46 at 7, Judge Marshall recently held that Evox's "making available" theory "fails as a matter of law," Samplin Decl. Ex. 25, at 4–5. And regardless, the parties' license expressly authorized Defendants to "store [Evox's] Images internally after termination." SUF 5.

As for Evox's trademark claim, this Court previously held that "*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), and its progeny foreclose Evox's trademark claim" because it "is based on Defendants' alleged unauthorized use of the *content* of [Evox's] digital files of the photographs." Dkt. 46 at 5, 8. In its Second Amended Complaint, Evox alleged the *exact same* theory of trademark infringement—which fails as a matter of law. Evox also has not even attempted to obtain evidence of likelihood of confusion—"the *sine qua non* of trademark infringement." *Network Automation, Inc. v. Adv. Sys. Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011).

Both of Evox's claims fail as a matter of law. Defendants are entitled to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).

## II.     FACTUAL BACKGROUND

### A.     The Parties Execute A License Authorizing Use Of Evox's Images

Evox and AOL executed a "Confidential Image License Agreement" in April

2

2014 that authorized AOL to use images from the "Evox Automotive Image Library" on AOL's "Autoblog" website. SUF 1–2. The license granted AOL "the right to terminate" the license "for any reason upon thirty (30) days written notice." SUF 3. The license also provided that "[u]pon termination . . . AOL shall cease use of the Images," except that AOL had the right to "store Images internally after termination in AOL's internal storage system for auditing and documentation purposes." SUF 4–5. The license granted Evox the right to "examine and audit all of AOL's records strictly related to the relationship" for "a period of twelve (12) months" after license termination "to verify AOL's compliance with the [license's] terms." SUF 6. The license did *not* require AOL to provide Evox periodic data on unique views of pages containing Evox's images, even though Evox has required other licensees to provide such data. *See Evox Prods. LLC v. Kayak Software Corp.*, 2017 WL 5634856, at *1 (C.D. Cal. Jan. 20, 2017) (Evox's license with Kayak required Kayak "to submit a 'Monthly Portal Usage Report' reflecting the number of unique page views"); SUF 7; Samplin Decl. Ex. 5, at 8 ("Plaintiff typically relies on the reports from its licensees to monitor use").

While the license was in effect, AOL stored Evox's images on AOL's "origin host server" and used the images on a portion of the Autoblog website. SUF 9, 18. The Autoblog site contains an "editorial side"—which "caters to [automobile] enthusiasts . . . who are interested in automotive news"—and a "product side"—which "caters to people who are researching" automobiles for purchase. SUF 10–13. The product side contains several "research tools," including a "Year Make Model" tool where users can search for specific vehicles and a "Compare" tool where users can compare vehicles side by side. SUF 14–17.

AOL used Evox's images only on the product side of the Autoblog site. SUF 18. Because "there were some gaps" in the coverage Evox provided (i.e., certain vehicles for which Evox did not supply images), AOL also used non-Evox images on the product side of Autoblog, including images from a provider called Autodata Solutions. SUF 19.

**B.    AOL Terminates The License And Removes Evox's Images**

AOL terminated the license effective February 2017 to reduce costs and transition to using exclusively Autodata images on Autoblog.  SUF 20, 29.  Before terminating, AOL began removing Evox images from Autoblog and replacing them with Autodata images.  SUF 21.  Tom Pitts—"the lead back-end developer" for Autoblog—testified that he rewrote software code in December 2016 so that Evox images would no longer appear on Autoblog if a user visited the site (i.e., a user could not call up, and thus could not be served with, an Evox image).  SUF 23–25.  Pitts testified that he disabled the display of Evox images on all parts of the product side of the site, but inadvertently "missed changing" the images on "one small section of [C]ompare."  SUF 26.  Thus, after December 2016, "the correct image" (an Autodata image) would have appeared if a user visited most sections of Compare; Evox images might have appeared only if a user visited the small "part of" Compare that Pitts "missed changing."  SUF 28.

Pitts learned that webpages on the small section of Compare could call up Evox images only *after* AOL deleted all the images from its origin server in June 2017—when no Evox images could have been accessed through the server in any event.  SUF 32, 34–35.  Upon learning at that point that some webpages were set to "call[] Evox images that don't exist," Pitts "fixed it" so that those pages would call "Autodata images."  SUF 33.

**C.    Evox Investigates Whether Its Images Are Available On Autoblog**

Evox maintains a "compliance department."  SUF 36.  The compliance department consisted of only two employees in 2017:  Barry Thompson (Evox's Vice President) and Tyler Alexander (an Evox data analyst).  SUF 37–39.  Its mission was then and is now to investigate whether current and former licensees are using Evox's images outside the scope of their licenses, and then to threaten those licensees with litigation in the hopes of securing settlement payments.  SUF 40.  Evox's compliance department follows a "normal pattern" when investigating current and former licensees in search of a litigation threat.  SUF 41.  This "normal pattern" has led to an average of six demand letters per year and 20 to 30 settlements for Evox since 2007, and ███████

Gibson, Dunn &
Crutcher LLP

██████████████████████████████████████████████████████

████████████████████████████████████. SUF 42–45.  In other words, Evox's business model is that of a copyright troll—threatening litigation against its licensing partners in the hopes of securing multimillion dollar settlements (far in excess of its license fees) through threats of litigation under the Copyright Act's statutory damages regime.

As part of Evox's "normal pattern," Alexander visits the current or former licensee's website to "figure out the structure of the website," and then writes a script to "automatically" "crawl" or "scrape" the site to compile a list of the URLs for each webpage where Evox images might appear and the URLs for each image embedded within the webpages.  SUF 46–47.  Alexander then runs another automated process to determine whether each URL corresponds to an Evox image and, if so, which one. SUF 48.  Through this process, Alexander determines that Evox images might be available on the licensee's website, but does not determine "whether . . . members of the public . . . are actually viewing those images" or whether the "licensee has actually served [an] image to anybody else besides [himself]."  SUF 49–51.  He finds only "that there is . . . *potential* for display to a member of the public."  SUF 53 (emphasis added).

Alexander then transmits his URL lists to Evox's "technical consultant," Tennyson Maxwell, SUF 54–55, to "verify that the images appeared on the web page" and to "provide a report asserting that," SUF 60–61.  Tennyson Maxwell—which is owned and operated solely by Michael Del Monte—was Evox's exclusive consultant from 2007 to 2017.  SUF 56–57.  Although Del Monte has been referred to as an "investigator," Del Monte "doesn't find anything"; rather, he merely "*confirms* things [Evox] find[s]" using an automated process.  SUF 62–63 (emphasis added).  After receiving Del Monte's report, Evox hires counsel to send the current or former licensee a demand letter threatening litigation.  SUF 64.  It typically takes Evox "[t]hree to six months" from the beginning of its investigation to "get[] a letter out."  SUF 65.

Evox followed its normal pattern when investigating AOL in May and June 2017. SUF 67–68.  Evox determined only that "AOL made [Evox's] images available to the

public" after the license terminated.  SUF 69.  Evox did not "discover whether any . . . members of the public . . . actually accessed and viewed the Evox images on the Autoblog site" after the license terminated, nor did Evox "discover whether AOL had actually served Evox images to members of the public after the license terminated." SUF 70–71.  Thompson—Evox's 30(b)(6) witness—admitted that Evox does not have "any evidence" that "a single individual . . . saw any of the Evox images on Autoblog after the license terminated in February 2017."  SUF 72; *see also* SUF 73 (Thompson agreed that Evox does not know whether any members of the public "actual[ly] access[ed]" and "viewed" Evox images on Autoblog after license termination); SUF 74 (Thompson testified:  "[C]an I point to a generalized member of the public that saw my image?  I've answered that three or four times.  And, no, I can't."); Samplin Decl. Ex. 24, at 3–4 (Evox has conceded that it "cannot determine precisely how many times after February 2017 the Subject Images were served from Defendants' servers").

For his part, Del Monte used an automated process to confirm that Evox images were "available from the AOL server" at the time he scanned the server.  SUF 75.  Del Monte admitted that he did not "determine . . . whether any member of the public, in fact, viewed [an] Evox image" through AOL's server after February 2017.  SUF 76–77. Indeed, Del Monte could not say "whether any member of the public actually saw the images that [he] located during [his] scans after February 2017."  SUF 78.  That is because Evox did not even ask him "to determine whether any members of the public . . . had viewed the Evox images at the URLs provided to [him] by Tyler Alexander after February 2017."  SUF 79–80.

Although AOL's access logs would have shown whether AOL actually served an Evox image to a user after the license terminated, SUF 81, Evox "never exercised [its] contractual right to examine and audit AOL's records relating to AOL's use of [Evox's images]," SUF 82; *see also* Samplin Decl. Ex. 11, at 138:14–21, 211:9 (Evox "never exercised" its right to examine or audit AOL's records); SUF 83 (Alexander agreeing that Evox's audit right "presumably" would have permitted Evox to inspect AOL's

6

access logs).[1]  When asked why, Thompson testified that he "can't identify a benefit of doing that" since Evox was able to determine on its own that certain images were available.  SUF 84.  Evox "could have reached out to AOL" for "user data," but he "didn't feel he needed to" because he was of the view that Evox "didn't need any more data from AOL" beyond what Evox had found.  SUF 85.

**D.    Evox Waits More Than One Year To Inform Defendants That Images May Have Been Available On Autoblog After License Termination**

After completing its investigation in July 2017, Evox lay in wait.  SUF 86–87.  It did not promptly inform AOL that images were still available, even though the license required Evox to "promptly inform [AOL] of any information related to the Images which could reasonably lead to a claim."  SUF 8.  Indeed, as part of its "normal pattern" of investigating licensees, Evox rarely, if ever, "immediately inform[s] the licensee of its findings," SUF 88, out of concern that doing so may cause the licensee to comply with its license and the "evidence" of alleged infringement "[to] disappear[]," SUF 89.

Consistent with that practice, Evox waited until August 2018 to inform AOL that Evox had found in May and June 2017 that AOL had made Evox images "available to the public" after license termination.  SUF 90, 92; *see also* SUF 94 (Evox did not immediately inform AOL because Evox was "concerned that AOL would take [the images] down").  Evox also threatened to seek over $200,000,000 in statutory damages under its "making available" theory of copyright infringement—even though it would have cost AOL less than $500,000 to license the images at issue.  SUF 91, 93.

By the time Evox sent AOL a demand letter in August 2018, all the access logs that would have shown whether AOL ever served an Evox image to an Autoblog user between license termination in February 2017 and AOL's deletion of all Evox images

---

[1]  "Access logs" are sometimes called "server logs," "web logs," or "user logs." Defendants use "access logs" to refer to the data that would have shown whether Evox images had been served to any members of the public who visited Autoblog.  *See* Samplin Decl. Ex. 10, at 44:19–24 ("access logs" show "what is being called from the server").

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:20-CV-02907-JWH(JEMX)

from its server in June 2017 had been long destroyed in the ordinary course of business. SUF 95–97.  Robb Stokes—Verizon Media's Director of Software Development—testified in a 30(b)(6) capacity that access logs rolled off of AOL's systems in 2017 after "approximately two weeks" depending "upon how much disc space [wa]s available." SUF 95.  In other words, Defendants would have been able to determine whether Evox images had been served to users before June 2017 had Evox notified Defendants of its purported findings when they were made—but there was "[n]o way" to make that determination when Evox sent AOL a demand letter over one year later.  SUF 98; *see also* SUF 99 (Stokes testifying that there currently is "no" "way that Autoblog can determine how many Evox images were served between February 2017 and June 2017").

## E.    Evox Files This Lawsuit For Copyright And Trademark Infringement

Evox filed its complaint on March 27, 2020, Dkt. 1, its First Amended Complaint on April 22, 2020, Dkt. 15, and its Second Amended Complaint on March 15, 2021, Dkt. 53.  Evox alleges that "Defendants have infringed Evox's copyrights in at least 281,721 Images by distributing them, transmitting them, copying them, displaying them, or making them available to the general public without license or authorization," and that Defendants infringed Evox's "service marks" "in connection with their unauthorized use" of the images in which the marks were embedded.  Dkt. 53 ¶¶ 50, 64, 69, 72.

## III.    LEGAL STANDARD

A moving party "is entitled to judgment as a matter of law" on "each claim or defense—or the part of each claim or defense"—for which the movant demonstrates "there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  A dispute is genuine only if there is sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party," and a fact is material only if it might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When the moving party would bear the burden of proof at trial, it "has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000).

8

When the moving party would not bear that burden, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party satisfies its initial burden, the nonmoving party must produce admissible evidence to show that a genuine dispute of material fact exists.  *Id.* at 1102–03.  Failure to make this showing entitles the moving party to summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).

## IV.   ARGUMENT

### A.   Evox's Copyright Infringement Claim Fails

Defendants are entitled to summary judgment on Evox's copyright infringement claim for three reasons:  (1) there is no evidence that Defendants served, disseminated, or transmitted even a single Evox image to a substantial number of people after license termination in 2017; (2) Evox's "making available" theory of copyright infringement—the only theory of liability Evox advances in this case—fails as a matter of law; and (3) Defendants' alleged conduct was expressly authorized by the parties' license.

#### 1.   There Is No Evidence Of Service To The Public After Termination

A copyright owner asserting a copyright infringement claim under the Copyright Act must "demonstrate that the alleged infringers violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106" and "show causation (also referred to as 'volitional conduct') by the defendant[s]." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017).  This case concerns the "public distribution" and "public display" rights under Section 106(3) and (5) of the Copyright Act.

As relevant here, a copyrighted image is "distributed" only when it is "actual[ly] disseminat[ed]" to a user.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1162 (9th Cir. 2007); *see also Annabooks, LLC v. Issuu, Inc.*, 2020 WL 6873646, at *4 (N.D. Cal. Sept. 24, 2020) ("infringement of the distribution right [in the Ninth Circuit] requires 'actual dissemination' of a work").  A computer owner "distributes copies of

9

1  [an] image[] by transmitting the photographic image electronically to the user's

2  computer," *Amazon*, 508 F.3d at 1162, such that a copy of the work "changes hands,"

3  *Fox Broad. Co. v. Dish Network LLC*, 160 F. Supp. 3d 1139, 1170 (C.D. Cal. 2015).

4      Similarly, an image is "displayed" only when "a computer owner . . . stores an

5  image as electronic information *and serves* that electronic information directly to [a]

6  user." *Amazon.com*, 508 F.3d at 1159 (emphasis added).  The computer owner must

7  cause the image to "fill [a user's] computer screen" and the user must actually "access[]

8  th[e] image[]" for a display to occur; a claim premised only on the "potential for future

9  display is purely speculative" and insufficient as a matter of law.  *VHT, Inc. v. Zillow

10  Grp., Inc.*, 918 F.3d 723, 736–37 (9th Cir. 2019); *see also Amazon*, 508 F.3d at 1159.

11      A work is distributed or displayed to "the public" only when the "same" work has

12  been "transmit[ted] to a substantial number of people" who "lack any prior relationship

13  to the work." *Am. Broad. Cos. v. Aereo, Inc.*, 573 U.S. 431, 447–50 (2014).  "[T]he

14  public" does not refer to individuals who access a work "in their capacities as owners or

15  possessors" of the work; rather, "'the public' consists of a large group of people" who

16  access a work "as ordinary members of the public." *Id.* at 448–50.

17      Here, Defendants are entitled to summary judgment on Evox's copyright claim

18  because there is no evidence that Defendants disseminated, served, or transmitted even

19  a single Evox image to a substantial number of people after the license terminated in

20  February 2017.  *See Celotex*, 477 U.S. at 322–24.  Thompson, Evox's 30(b)(6) witness,

21  admitted that Evox does not have "any evidence" that "a single individual"—let alone a

22  substantial number of people—"saw any of the Evox images on Autoblog after the

23  license terminated in February 2017."  SUF 72; *see also* SUF 73 (Evox does not know

24  whether any members of the public "actual[ly] access[ed]" and "viewed" Evox images

25  on Autoblog after the license terminated); SUF 74 (Thompson testifying:  "[C]an I point

26  to a generalized member of the public that saw my image?  I've answered that three or

27  four times.  And, no, I can't.");  Samplin Decl. Ex. 24, at 3–4.  Del Monte similarly

28  conceded that he did not "determine . . . whether any member of the public, in fact,

Gibson, Dunn &
Crutcher LLP

viewed [an] Evox image" on AOL's server after February 2017.  SUF 76; SUF 77; SUF
78 (Del Monte admitted he could not say "whether any member of the public actually
saw the images that [he] located during [his] scans after February 2017").  And neither
of Evox's experts could identify any evidence showing that Defendants served a single
Evox image to any members of the public after February 2017.  SUF 100–101.  Indeed,
Evox's expert conceded that he had not "seen evidence that some person out there in the
public . . . used or accessed an image" through AOL's server after that date.  SUF 102

Evox did not even attempt to discover during its investigation in May and June
2017 "whether any . . . members of the public . . . actually accessed and viewed the Evox
images on the Autoblog site," or "whether AOL had actually served Evox images to
members of the public," after the license terminated.  SUF 70–71.  Nor did Evox ask
Del Monte "to determine whether any members of the public . . . had viewed the Evox
images at the URLs provided to [him] by Tyler Alexander after February 2017."  SUF
79; SUF 80 (Evox did not ask Del Monte "to determine viewership" of Evox images).

Evox admits that it "could have reached out to AOL [in mid-2017] and asked" for
"user data" (such as access logs), but Evox did not believe that there was any "benefit"
to doing so.  SUF 84–85.  That is why Evox "never exercised [its] contractual right to
examine and audit AOL's records" (including access logs) "relating to AOL's use of
[Evox's images]" to determine whether any images were served to members of the
public after license termination.  SUF 82; *see also* SUF 6 (license granting Evox right to
"examine and audit all of AOL's records strictly related to the [parties'] relationship");
SUF 83 (Alexander agreeing that Evox's audit right "presumably" would have permitted
Evox to inspect AOL's access logs).  And that is why Evox did not promptly inform
Defendants about the purported availability of Evox images on "one small section of
[C]ompare," SUF 26, at a time when Defendants could have preserved access logs
otherwise destroyed in the ordinary course after "approximately two weeks," SUF 95.
That Evox now lacks evidence that Defendants served any Evox image to a substantial
number of people after February 2017 (to the extent any such evidence ever existed at

11

Gibson, Dunn &
Crutcher LLP

all) is the direct result of Evox's failure to exercise its audit right and to satisfy its obligation to "promptly inform" Defendants of a potential claim.  SUF 8.

To be sure, there is evidence that Evox personnel (Thompson and Alexander) and its consultant (Del Monte) viewed a small, unidentified number of Evox images on AOL's server after February 2017.  *See* Samplin Decl. Ex. 11, at 143:19–23, 206:9–11; *id.* Ex. 16, at 89:8–90:14; *id.* Ex. 12, at 45:8–46:11.  But neither Evox personnel nor its consultant constitute "the public," as that term is used in the Copyright Act.  The Supreme Court held in *Aereo* that "'the public' consists of a large group of people outside of a family and friends" who "lack any prior relationship to the works."  573 U.S. at 448–49.  "[W]hen an entity [transmits a work] to a set of people, whether they constitute 'the public' often depends upon their relationship to the underlying work." *Id.* at 448.  The Court provided the following illustration:

> When, for example, a valet parking attendant returns cars to their drivers, we would not say that the parking service provides cars "to the public."  We would say that it provides the cars to their owners.  We would say that a car dealership, on the other hand, does provide cars to the public, for it sells cars to individuals who lack a pre-existing relationship to the cars.

*Id.* at 448–49.

*Aereo* forecloses any theory of liability predicated on access of the images by Evox personnel or its consultant.  Evox contends that it "owns and maintains the copyrights" in each of the images at issue in this case, Dkt. 53 ¶¶ 44–47, and thus Evox personnel accessed the images as "owners" and "possessors" of the images—not as "ordinary members of the public," *Aereo*, 573 U.S. at 450; *see also* Samplin Decl. Ex. 11, at 164:8, 222:20, 236:21 (Thompson referring to the images as "my images"); *Yesh Music, LLC v. Amazon.com, Inc.*, 249 F. Supp. 3d 645, 660 (E.D.N.Y. 2017) ("[a]pplying [*Aereo*'s] reasoning here, when users downloaded and streamed plaintiffs' songs from their personal locker, that distribution was not one to the 'public' because the users . . . received the songs in their capacities as owners").

The same is true of Del Monte—who Evox employed to "act in [its] stead." *Automation By Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749, 757 (7th Cir. 2006).

As Evox's agent for purposes of "confirm[ing]" whether Defendants continued to host Evox images on a server after termination, SUF 62, Del Monte was "authorized to do any acts which his principal might do"—including accessing and copying the images, Cal. Civ. Code § 2304. Evox and Del Monte had developed a "well-established work flow," SUF 58, over the course of working together approximately 60 times from 2007 to 2017, SUF 59. As part of that work flow, Del Monte was authorized to access and possess the works—in fact, finding, accessing, and possessing the images for use in future litigation was the entire point of the parties' arrangement. *See* Samplin Decl. Ex. 4, at 4 ("Plaintiff retained a third party expert to conduct a search for images"); *id.* Ex. 12, at 30:9–14, 51:21–52:2. Del Monte had a "prior relationship to the" images, and thus any access and viewing of them was as an authorized "owner[] or possessor[]"— not an "ordinary member[] of the public." *Aereo*, 573 U.S. at 450; Ex. 12 at 45:8–46:11.

At minimum, any access of the images by Del Monte is insufficient to prove copyright infringement as a matter of law because he is only one person whereas "the public" consists of "a large" or "substantial" number of people. *Aereo*, 573 U.S. at 448, 450. In *Zuffa, LLC v. Latham*, 2020 WL 4458920, at *3 (N.D. Cal. Feb. 26, 2020), the court held that a "public" display does not occur where the plaintiff's auditor or consultant is the only person outside of a family and friends who views a copyrighted work. There, the plaintiff owned the copyright for the UFC 229 broadcast that aired in October 2018. *Id.* at *1. On the day the fight aired, the plaintiff sent its auditor to the defendant's club that was exhibiting the fight to over 20 people, "most of whom were family or friends." *Id.* After the auditor saw the fight airing at the club, the plaintiff sued the defendant for copyright infringement, claiming that the defendant had publicly displayed the plaintiff's work without authorization. *Id.* at *2. Relying on *Aereo*, and "[a]ssuming that . . . [the auditor] was a member of the public," the court held that the plaintiff had failed to establish a "public" display because the auditor was the only person in attendance outside of the defendant's family and friends and "[o]ne person is not a 'large group of people.'" *Id.* at *3 (quoting *Aereo*, 573 U.S. at 448). So too here.

13

Gibson, Dunn &
Crutcher LLP

There is no evidence that Defendants served or disseminated an Evox image to a substantial number of people after February 2017, and thus Defendants are entitled to summary judgment on Evox's copyright claim.  *See Celotex*, 477 U.S. at 322–24.

### 2.     Evox's "Making Available" Theory Fails As A Matter Of Law

Recognizing that it lacks evidence that Defendants served any Evox images to a substantial number of people after February 2017, Evox insists that Defendants are liable for copyright infringement because "AOL made [Evox] images available to the public" after that date by continuing to host the images on its server.  SUF 69; *see also* Samplin Decl. Ex. 22, at 41; *id.* Ex. 21, at 162:10–163:8.  As explained in Defendants' Motion for Judgment on the Pleadings, Evox's "making available" theory is foreclosed by the Copyright Act and Ninth Circuit precedent.  *See* Dkt. 59 at 8–16; Dkt. 63 at 1–8.

A copyrighted image is "displayed" when "a computer owner . . . stores an image as electronic information and serves that electronic information directly to [a] user," and an image is "distributed" when it is actually disseminated to a user.  *Amazon*, 508 F.3d at 1159, 1162.  Relying on these constructions of the Act, courts in this Circuit have repeatedly rejected the "making available" theory that Evox advances in this case.  In *Amazon*, the Ninth Circuit held that the plaintiff could not establish that the defendant "displayed" or "distributed" the plaintiff's full-size images because the defendant "did not communicate the . . . images to the user's computer."  *Id.* at 1159–62.  The court rejected "that merely making images 'available' violates the copyright owner's distribution right" for the same reason:  the defendant did "not communicate the[] images to the computers of people using [the defendant's] search engine."  *Id.* at 1162.

Relying on *Amazon*, the Ninth Circuit reaffirmed in *Zillow* that a computer owner does not violate the display right merely by "mak[ing] [images] available for display," unless the owner causes the images to "fill a [user's] computer screen."  *Zillow*, 918 F.3d at 736.  In *Zillow*, a photography studio like Evox claimed that Zillow, "an online real estate marketplace," publicly displayed the studio's images on the "Digs" feature of Zillow's website without authorization.  *Id.* at 730, 734–36.  The jury found that Zillow

14

Gibson, Dunn &
Crutcher LLP

directly infringed 28,125 photos, but the district court concluded that insufficient evidence supported the verdict as to 24,202 photos.  *Id.* at 734.  The district court upheld the verdict as to the remaining images because "the jury could have reasonably concluded that users accessed those images through Digs's search function."  *Id.* at 736. On appeal, the studio "attempt[ed] to shoehorn an additional 1,694 photos into this category," arguing that "the jury could have reasonably inferred that Zillow made [the images] 'available for public display'" in violation of Section 106(5).  *Id.*  The Ninth Circuit rejected the argument, explaining that "[t]his theory presumes that the Copyright Act's display right encompasses an exclusive right to 'make available for display,' a position neither supported by the statute nor embraced by this court."  *Id.*

Since *Amazon* and *Zillow*, numerous district courts in this Circuit have held that the "making available" theory fails as a matter of law.  In *SA Music, LLC v. Amazon.com, Inc.*, 2020 WL 3128534, at *2 (W.D. Wash. June 12, 2020), for example, the court held that a computer owner does not violate the distribution right "by placing the copyrighted works on servers or computers accessible to Internet users."  Rather, an infringing distribution occurs only when there is "an actual dissemination of either copies or phonorecords or the transfer of a file containing the copy from one computer to another." *Id.* at *3; *see id.* at *6 (*Zillow*'s analysis of the "making available" theory "applies to a copyright holder's right to distribute").  In *Annabooks,* the court held that copyright infringement liability does not lie where a defendant does not transmit a work to a user "beyond making [the work] available" on its website.  2020 WL 6873646, at *4.

And most recently, Judge Marshall held in another case filed by Evox that the "making available" theory "fails as a matter of law" under "the Ninth Circuit's binding decision in [*Zillow*]."  Samplin Decl. Ex. 25, at 4–5, 7.  Judge Marshall recognized that *Zillow* "reject[ed] . . . the making available theory," and held that Evox would have to show that "Defendants served the images to the public" in order to prove its copyright infringement claim.  *Id.* at 5; *see also In re Napster, Inc. Copyright Litig.*, 377 F. Supp. 2d 796, 802–03 (N.D. Cal. 2005) (rejecting the "making available" theory); *Atl.*

15

*Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 983 (D. Ariz. 2008) (same).

There is no evidence that Defendants served any Evox images to the public after February 2017. At most, Evox can show that its images continued to reside on AOL's server and were available to the public until June 2017. Samplin Decl. Ex. 11, at 212:24–25; *id.* Ex. 4, at 4–5; *id.* Ex. 16, at 47:11–15, 95:5–99:18; *id.* Ex. 7, at 83:8–18, 102:13–103:8, 119:19–23, 131:7–14; *id.* Ex. 6, at 8–9; *id.* Ex. 9, at 2; *id.* Ex. 10, at 51:12–15. That is, Evox can show only "that there [was] . . . *potential for display* to a member of the public" between February and June 2017. SUF 53. But as *Zillow* held, a claim predicated on the "potential for future display" and distribution "is purely speculative" and insufficient as a matter of law. 918 F.3d at 737. Evox's copyright claim thus fails.

### 3. The License Expressly Authorized Defendants' Alleged Conduct

Evox's copyright claim fails for the independent reason that the license expressly authorized Defendants to store Evox images on AOL's server after license termination.

"The existence of a license creates an affirmative defense to a claim of copyright infringement" where the accused conduct is authorized by the license. *Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948, 954 (9th Cir. 2018), *rev'd in part on other grounds*, 139 S. Ct. 873 (2019). The defendant asserting an express license defense bears the initial burden of identifying a license authorizing the alleged conduct. *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018); *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 507 (5th Cir. 2012). The burden then shifts to the plaintiff to prove the conduct exceeds the scope of the license. *Spinelli*, 903 F.3d at 197. The license must be construed according to state contract rules and in accordance with the purposes of copyright law. *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir. 1989).

The license here "shall be interpreted, construed and enforced in all respects in accordance with the laws of the Commonwealth of Virginia." Samplin Decl. Ex. 3, at 10. Under Virginia law, a "contract is construed according to its plain meaning" when the contract's terms "are clear and unambiguous." *Envtl. Staffing Acquisition Corp. v. B & R Constr. Mgmt.*, 283 Va. 787, 793 (2012). The "[w]ords that the parties used are

16

normally given their usual, ordinary, and popular meaning"; "[n]o word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it."  *Id.*

The license unambiguously authorized Defendants to store Evox images on AOL's server after license termination:  "AOL can store Images internally after termination in AOL's internal storage system for auditing and documentation purposes." SUF 5.  There is no dispute that this provision authorized Defendants to store Evox images on AOL's origin server after February 2017.  Nor is there any dispute that Defendants removed all Evox images from that server in June 2017 in any event.

Evox and its experts have contended that Defendants exceeded the scope of this provision when they "invite[d] search engines in to copy the images and display them to the public."  Samplin Decl. Ex. 21, at 170:21–22; *see also id.* at 50:21–24, 56:3–14, 61:3–9.  This argument suffers from several defects.  For starters, there is no evidence that search engine bots actually crawled and indexed Evox images from AOL's servers. Alexander testified that he conducted his investigation by going "directly to Autoblog," SUF 68, and Evox's expert could only "*infer* that search engines such as Google would have found and stored" the images based on the "availab[ility]" of the images, Samplin Decl. Ex. 19 ¶¶ 43–45, 53 (emphasis added).

Even so, any taking and copying of images on AOL's server by search engine bots cannot give rise to direct copyright infringement liability against Defendants.  The Copyright Act prohibits the unauthorized display and distribution of copyrighted works to "the public," 17 U.S.C. § 106, and "'the public' consists of a large group of *people*," *Aereo*, 573 U.S. at 448 (emphasis added).  "A bot is not a person," Samplin Decl. Ex. 21, at 49:20, so Defendants cannot be held liable for any taking and copying by bots.

Moreover, the volitional conduct requirement is not met when an automated bot takes an image from a website owner's server.  A website owner is not actively involved in the infringement as required on a direct infringement claim, where "automatic copying" of copyrighted material is "instigated by others" and the owner does nothing more than exercise general control over its website.  *Zillow*, 918 F.3d at 732; *see also*

1    *Fox Broad. Co. v. Dish Network LLC*, 747 F.3d 1060, 1067 (9th Cir. 2014); *CoStar Grp.,*

2    *Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550–55 (4th Cir. 2004); *Religious Tech. Ctr. v.*

3    *Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1369 (N.D. Cal. 1995).

4         A bot is "a software program that automatically accesses thousands of websites

5    . . . and indexes them within a database on [the search engine's] computers." *Amazon*,

6    508 F.3d at 1155.  Thus, any access of Evox images on AOL's server by bots was not a

7    display or distribution *by* Defendants—but, rather, a *taking* of images by an automated

8    process over which Defendants exercise no control.  *See* Samplin Decl. Ex. 21, at 50:2–

9    4 (Evox expert testifying that "[t]he entity that controls the bot . . . makes the copy");

10   *Zillow*, 918 F.3d at 732 ("automatic copying, storage, and transmission of copyrighted

11   materials, when instigated by others, do not render [a website owner] strictly liable for

12   copyright infringement"); 4 Patry on Copyright § 13:11.50 (no distribution when "third

13   parties are reaching into the individuals' hard drive and taking an electronic file").

14        For similar reasons, Defendants cannot be held liable for any display of the images

15   by third-party search engines.  "[D]irect liability must be premised on conduct that can

16   reasonably be described as the *direct cause* of the infringement."  *Giganews*, 847 F.3d

17   at 666.  "Infringement of the [display] right [thus] requires [displaying] *by* . . .

18   [D]efendant[s]"—not a search engine such as Google.  *Id.*  Indeed, the "thumbnail"

19   versions of images that Google indexes and provides in response to a user's inquiry "are

20   stored in Google's servers." *Amazon*, 508 F.3d at 1155; Samplin Decl. Ex. 2, at 148:17–

21   23.  The Ninth Circuit has thus held that Google, if anyone, infringes when it "store[s]"

22   and "communicate[s] copies of those thumbnails to Google's users."  *Id.* at 1160.[2]  To

23   the extent Evox contends that a user accessed an Evox image on AOL's server through

24   Google, Evox's expert admitted that there is no "evidence that some person out there in

25   the public . . . used or accessed an image [on AOL's server] through Google."  SUF 102.

26        Defendants were authorized to store Evox images on AOL's server after license

27

28   [2]   The Ninth Circuit held that Google's use of thumbnail versions of the plaintiff's
     copyrighted images constituted fair use.  *See Amazon*, 508 F.3d at 1163–69.

Gibson, Dunn &
Crutcher LLP

termination, and Evox cannot identify any conduct exceeding the scope of the license that could give rise to a claim for copyright infringement.

## B.   Evox's Enhanced Statutory Damages Claim For Willful Infringement Fails

Summary judgment also is warranted on Evox's claim that Defendants willfully infringed Evox's copyrights for purposes of enhanced statutory damages under Section 504(c)(2). *See* Dkt. 53 ¶¶ 65–66. To establish willfulness under the Copyright Act, a copyright owner must show "(1) that [the defendant] was actually aware of the infringing activity, or (2) that the [defendant's] actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." *Zillow*, 918 F.3d at 748. "The plaintiff bears the burden of proving willfulness." *Taylor Holland LLC v. MVMT Watches, Inc.*, 2016 WL 6892097, at *13–14 (C.D. Cal. Aug. 11, 2016).

"[A]ctual notice" that conduct constitutes copyright infringement is required to establish willfulness under the first prong. *Zillow*, 918 F.3d at 748; *see also Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 957 (9th Cir. 2001). Willful blindness requires evidence that the defendants "subjectively believed that infringement was likely occurring on their networks and that they . . . took deliberate actions to avoid learning about the infringement." *Zillow*, 918 F.3d at 748; *see also Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1073 (9th Cir. 2013). Willfulness can be resolved on summary judgment where the relevant facts are undisputed. *See Taylor Holland*, 2016 WL 6892097, at *13.

Here, there is no evidence that Defendants actually knew before receiving Evox's demand letter in August 2018 that Evox images could have been viewed on a small part of the Compare feature between February and June 2017. Nor is there any evidence that Defendants subjectively believed infringement was likely occurring during that period and that they took active steps to avoid learning about any such infringement. On the contrary, the undisputed evidence demonstrates that Defendants took active steps to *remove* Evox images from the Autoblog website *before* the license terminated.

Defendants' 30(b)(6) witness, Ray Dorman, testified that he developed a workstream in December 2016 "to make the switchover" to Autodata images "so that

19

[AOL] would no longer be displaying Evox images" after the license terminated.  SUF 22.  Dorman delegated the responsibility to Pitts, SUF 24, who rewrote software code in December 2016 so that Evox images would no longer appear on Autoblog, SUF 25.  The license terminated in February 2017, and shortly thereafter Evox informed AOL that Evox images may have still been used "in the style tab" on Autoblog.  SUF 29–30.  AOL promptly addressed Evox's concern, SUF 31, and ultimately removed all Evox images from its server by June 2017, SUF 34–35.  Defendants did not hear from Evox about any allegedly unauthorized use of images until August 2018—at which point Defendants had long ceased even storing Evox images on their systems.

Evox's three arguments of willful infringement of its copyrights are unavailing.

*First*, Evox has argued that "AOL was a sophisticated, multi-billion dollar technology company" that had "advanced knowledge of what constitutes copyright infringement of digital media files, and how to prevent it."  Samplin Decl. Ex. 4, at 3.  According to Evox, "AOL was either aware of the infringing activity, or that its actions were the result of a reckless disregard for, or willful blindness to, Plaintiff's copyrights." *Id.*; *see also* Samplin Decl. Ex. 11, at 223:13–22.

But there is no evidence that Defendants actually knew during the relevant period that Evox images could still be called up on one small part of the Compare feature, let alone that any users actually accessed any Evox images through AOL's server.  Pitts testified that he first learned that he had inadvertently "missed changing" Evox images to Autodata images on a "small section" of the Compare feature only *after* the "Evox images [ceased to] exist" on AOL's systems.  SUF 32–33.  And Defendants' other witnesses consistently testified that they first learned that Evox images might have been accessible on a part of the Compare feature only *after* Evox threatened litigation in August 2018 or filed this lawsuit in March 2020.  *E.g.*, Samplin Decl. Ex. 2, at 115:19–116:9; *id.* Ex. 10 at 20:1–4, 27:14–28:20.

Moreover, Evox's theory of willfulness is foreclosed by *Zillow*, in which the Ninth Circuit rejected the argument that infringement is willful when committed by "a

sophisticated business with a robust legal team" that "should have known" better.  918 F.3d at 749; *see Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 833 (9th Cir. 2019).  Were it otherwise, infringement automatically would be willful every time a "sophisticated" company treads on another's rights—meaning the willfulness analysis would focus on the defendant's identity and sophistication rather than its conduct.  That is not the law.

*Second*, Evox has argued that "AOL has acknowledged that it made efforts to disable the display of the Subject Images from its servers even before it terminated the License Agreement.  As a result of AOL's reckless disregard for whether its efforts to remove [Evox images] were successful, however, the [Evox images] remained accessible to the general public through AOL's Autoblog website."  Samplin Decl. Ex. 4, at 3–4.  But Evox's admission that Defendants "made efforts to disable the display of" Evox images demonstrates that Defendants "took deliberate actions to avoid" infringement—the exact *opposite* of recklessness or willful disregard.  *Zillow*, 918 F.3d at 748.  Further, Evox's contention that Defendants were required to check whether their efforts to remove the images were successful is contradicted by the case law.  *See id.* at 749 (rejecting district court's conclusion that Zillow willfully infringed because it "did not perform further investigation" into the scope of its rights).  It also is contradicted by the record.  After Pitts rewrote the software code in December 2016 so that Evox images would not appear on Autoblog, Dorman reviewed Pitts's work and concluded that "this all looks good from what I can tell."  SUF 27.  Any continued availability of the images afterward was the result of "human error," which cannot show willfulness as a matter of law.  *See Novelty Textile, Inc. v. Windsor Fashions, Inc.*, 2013 WL 12114062, at *7 (C.D. Cal. Aug. 21, 2013) (no willfulness where defendant attempted to remove infringing products from distribution but sold one product due to "human error").

*Third*, Evox has argued that it was willful for Defendants to expose the images to Google bots.  *See* Samplin Decl. Ex. 11, at 223:23–224:1.  But the Evox images stored on AOL's server were treated like every other asset stored on the server, as every such asset could have been crawled by search engine bots.  Samplin Decl. Ex. 2, at 158:5–8;

*id.* Ex. 17 at 52:16–20.  And thumbnail versions of images accessible through Google "are stored in," and thus served from, "Google's servers"—not the website operator's servers.  *Amazon*, 508 F.3d at 1155.  In any event, there is no evidence that any member of the public actually accessed and viewed an Evox image from AOL's server though Google, SUF 102—meaning that Evox's willfulness theory is indistinguishable from its foreclosed "making available" theory.[3]

### C.   Evox's Trademark Infringement Claim Fails

#### 1.   Evox's Trademark Claim Is Foreclosed By *Dastar* And Its Progeny

Evox's theory is that its mark is embedded within its copyrighted images (as a watermark), and that Defendants committed trademark infringement when they used the content of the Evox's images (including the watermark) without authorization.  Dkt. 53 ¶¶ 71–73.  This is the *same* theory this Court held is "foreclose[d]" by "*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), and its progeny."  Dkt. 46 at 5.

In *Dastar*, the Supreme Court held that the phrase "origin of goods" in Section 43 of the Lanham Act refers only to "the producer of the tangible goods that are offered for sale"—"not to the author of any idea, concept, or communication embodied in those goods."  539 U.S. at 33–34, 37.  Applying that definition, the Court held that a "videotape producer's unaccredited copying of material from a public domain television series did not violate the Lanham Act's prohibition against reverse [passing] off . . . because the producer, not [the] creator of [the] underlying material, was the 'origin' of [the] physical products the producer sold as its own."  *Evox*, 2020 WL 5894564, at *1.

Several circuit courts have extended *Dastar*'s reasoning to trademark infringement claims under Section 32 of the Lanham Act, holding that a claim predicated on the "unauthorized display [or] performance" of content containing an embedded trademark cannot give rise to a claim for trademark infringement.  *See Phoenix Ent.*

---

[3]   Citing Pitts's deposition transcript, Evox's expert averred that "Defendants' representatives have testified that they were aware that the media where Evox Images were being stored was being indexed after the License Agreement was terminated." Samplin Decl. Ex. 20 ¶ 46.  This ignores Pitts's testimony that he did not know whether search engine bots indexed any Evox images.  Samplin Decl. Ex. 7, at 133:22–134:5.

Gibson, Dunn &
Crutcher LLP

1   *Partners v. Rumsey*, 829 F.3d 817, 830 (7th Cir. 2016); *Phoenix Ent. Partners, LLC v.*
2   *Casey Road Food & Beverage, LLC*, 728 F. App'x 910, 913 (11th Cir. 2018).

3          In *Slep-Tone Entertainment Corp. v. Wired for Sound Karaoke & DJ Services,*
4   *LLC*, 845 F.3d 1246, 1249–50 (9th Cir. 2017), for example, the Ninth Circuit rejected a
5   claim under Section 32 of the Lanham Act where the trademark was embedded in the
6   creative content used without authorization.  There, the plaintiff released compact discs
7   containing karaoke music tracks and accompanying graphics under the trademark
8   "Sound Choice."  *Id.* at 1247–48.  The plaintiff authorized users to make only one digital
9   copy of the content of the discs, but sued the defendants alleging that they were
10  performing karaoke shows using unauthorized copies of the plaintiff's discs.  *Id.* at 1248.

11         The Ninth Circuit held that the plaintiff's trademark claim failed as a matter of
12  law.  *Slep-Tone*, 845 F.3d at 1250.  The court explained that "the 'good' whose 'origin'
13  is material for purposes of a trademark infringement claim is the 'tangible product sole
14  in the marketplace' rather than the creative content of that product," and thus defendants'
15  "allegedly unauthorized use of the *content* of [p]laintiff's karaoke tracks" could not form
16  the basis of a trademark claim.  *Id.*  Moreover, consumers who see defendants'
17  performances of the karaoke tracks would "not be confused about the source of the
18  tangible good sole in the marketplace," because they were not aware of "the
19  unauthorized digital copy of the track," and the defendants "neither [sold the digital files]
20  nor ma[d]e representations about their source medium."  *Id.*  In short, "[w]hen the claim
21  is more accurately conceived of as attacking unauthorized copying, *Dastar* requires
22  [courts] to avoid recognizing a 'species of mutant copyright law' by making such claims
23  cognizable under the Lanham Act."  *Id.* (quoting *Dastar*, 539 U.S. at 34).

24         In its March 1, 2021 Order on Defendants' Motion to Dismiss, this Court agreed
25  that "*Dastar* and *Slep-Tone* compel the conclusion" that Evox's trademark claim fails
26  "as a matter of law," because it "is based on Defendants' alleged unauthorized use of
27  the *content* of [Evox's] digital files of the photographs" in which Evox's marks are
28  embedded.  Dkt. 46 at 7–8.  The Court explained that Evox was *not* "the producer of the

23

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:20-CV-02907-JWH(JEMX)

relevant good with which consumers routinely interacted," that "Defendants [had not] distributed a tangible good," and that it is immaterial whether "visitors to Autoblog were 'uniquely' interested in 'automotive stock imagery.'" *Id.* at 9–10. Evox insisted "that it should not be barred from protecting the goodwill associated with its trademark," but the Court held it "is bound by *Dastar* and *Slep-Tone*." *Id.* at 10.

Despite concluding that Evox's theory of trademark infringement failed as a matter of law, the Court granted Evox leave to amend. Dkt. 46 at 10. But Evox then alleged the *exact same* theory that the Court rejected, *see* Dkt. 53 ¶¶ 71–73—insisting that it should be permitted to pursue an expansive trademark claim that is contrary to Supreme Court and Ninth Circuit precedent, *see* Dkt. 62 at 21. The Court should follow its prior ruling and grant summary judgment to Defendants on this claim.

## 2.  Evox Has No Evidence That Consumers Are Likely To Be Confused

Evox also has made no effort to prove that Defendants' "conduct is likely to confuse consumers about the source of the products." *Multi Time Machine, Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 933 (9th Cir. 2015). Evox has not produced a consumer survey or an expert report, or elicited any witness testimony on likelihood of confusion. Evox's "arguments and statements of counsel are not evidence" and cannot "defeat[] . . . [a] motion for summary judgment." *Barcamerica Int'l USA Tr. v. Tyfield Imps., Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002). There also "is no risk that [users] might think that [Evox] is sponsoring or endorsing" Defendants' alleged use of the images and marks, because "producers of communicative goods often embed their marks . . . in [the good's] content," *Rumsey*, 829 F.3d at 829–30, and there is no evidence that Defendants "use[] [Evox's] mark[s] to advertise [their] services," *Casey Road*, 728 F. App'x at 912.

Evox could not prove likelihood of confusion in any event, as "there is no likelihood of consumer confusion as a matter of law" where, as here, the parties' goods and services "are unrelated." *Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 861 (9th Cir. 1996). In *Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 790–91 (9th Cir. 1996),

24

Gibson, Dunn & Crutcher LLP

for example, the Ninth Circuit held that the plaintiff's literary works and toys were "unrelated as a matter of law" to the defendant's garbage bags, making confusion "implausible." It is similarly undisputed that Defendants' Internet services are unrelated to Evox's images. Evox therefore cannot establish likelihood of confusion as a matter of law, providing a separate and independent basis on which the Court should grant summary judgment to Defendants on Evox's trademark claim.

## V.     CONCLUSION

The Court should grant summary judgment in Defendants' favor on Evox's first cause of action for copyright infringement and second cause of action for trademark infringement.

DATED:  June 24, 2021

SCOTT A. EDELMAN
PERLETTE MICHELE JURA
ILISSA SAMPLIN
SHAUN A. MATHUR
GIBSON, DUNN & CRUTCHER LLP


By:  */s/ Scott A. Edelman*
                    Scott A. Edelman

Attorneys for Defendants AOL INC., OATH INC., and VERIZON MEDIA INC.

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:20-CV-02907-JWH(JEMX)

Gibson, Dunn &
Crutcher LLP