SCOTT A. EDELMAN, SBN 116927
  sedelman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East
Suite 4000
Los Angeles, CA 90067-3026
Telephone: 310.552.8500
Facsimile: 310.551.8741

PERLETTE MICHÈLE JURA, SBN 242332
  pjura@gibsondunn.com
ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
SHAUN A. MATHUR, SBN 311029
  smathur@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Attorneys for Defendant Yahoo Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| EVOX PRODUCTIONS LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>YAHOO INC.,<br><br>Defendant. | CASE NO. 2:20-cv-02907-MEMF-JEM<br><br>**YAHOO'S MOTION TO EXCLUDE THE PROFFERED EXPERT TESTIMONY OF MICHAEL DEL MONTE**<br><br>**HEARING:**<br>Date:  July 5, 2023<br>Time:  10:00 a.m.<br>Judge:  Maame E-M. Frimpong |

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on July 5, 2023 at 10:00 a.m. or as soon thereafter as this matter may be heard before the Honorable Maame Ewusi-Mensah Frimpong, in Courtroom 8B of the United States Courthouse, located at 350 West First Street, Los Angeles, CA 90012, Defendant Yahoo Inc. ("Yahoo") will and hereby does move this Court for an order under Federal Rules of Evidence 702 and 403 excluding the preferred expert testimony of Michael Del Monte, an expert witness disclosed by Plaintiff Evox Productions LLC ("Evox").[1]

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Shaun Mathur in support thereof, all other pleadings and papers on file in this action, any oral argument that may be heard by the Court, and any other matters that the Court may deem appropriate.

Pursuant to Local Rule 7-3, this Motion is made following the conference of counsel, which took place on May 31, 2023. During that conference, the parties were unable to resolve the issues presented in this Motion.

DATED: June 7, 2023

    SCOTT A. EDELMAN
    PERLETTE MICHELE JURA
    ILISSA SAMPLIN
    SHAUN A. MATHUR
    GIBSON, DUNN & CRUTCHER LLP

    By: */s/ Scott A. Edelman*
    Scott A. Edelman

    Attorneys for Defendant Yahoo Inc.

---

[1] Because the parties agreed to substitute "Yahoo Inc." for all three prior Defendants (Dkt. 161), this motion uses "Yahoo" and "AOL" interchangeably.

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ................................................................................................1

II. BACKGROUND .................................................................................................1

III. ARGUMENT ......................................................................................................3

    A. Del Monte May Not Offer Expert Testimony On The Facts Of The Case And Any Investigations Performed In His Capacity As A Fact Witness ....................................................................................................3

    B. Del Monte's Proffered Opinions Are Not Reliable ..................................4

    C. Del Monte's Opinions Concerning The '04 File Are Unhelpful, Improper, And Speculative .......................................................................6

    D. Del Monte's Proffered Testimony On The Alleged Use Of Evox Images After The License Period Is Unhelpful And Not Tied To The Facts Of The Case .............................................................................8

    E. Del Monte's Proffered Expert Testimony Is Inadmissible Under Rule 403 ..................................................................................................10

IV. CONCLUSION .................................................................................................10

## I. INTRODUCTION

Evox seeks over $200 million in damages based in part on the unreliable and inappropriate testimony of its professional lawyer witness, Michael Del Monte. Del Monte is an advocate dressed up as a witness, deployed each time Evox investigates a former licensee to rubber stamp the findings of Evox's "compliance department," and called upon whenever Evox files a lawsuit to fill the holes in Evox's case. There is not even a pretense of expert impartiality or independent analysis to Del Monte's work. In this case alone, Del Monte purports to serve as a testifying fact witness, a consulting expert, and a testifying expert witness—even though the work he performs in each role is largely the same. It is imperative that this Court exercise its gatekeeping function to prevent Del Monte's purported expert testimony from poisoning the jury.

Yahoo has separately moved to exclude certain reports Del Monte prepared as a fact witness and consulting expert. Through this motion, Yahoo seeks to preclude Del Monte from offering the purported expert testimony and opinions outlined in his expert report. Del Monte improperly seeks to give his prior factual findings the imprimatur of expert analysis and opinion, and renders opinions on how the jury should weigh the credibility of Yahoo and its counsel. In addition, Del Monte fails to identify the methodologies he used to reach his conclusions, much less demonstrate that his methodologies are reliable, and offers opinions that are irrelevant and unhelpful, not tied to the facts of the case, and merely parrot the arguments of Evox's counsel. Accordingly, the Court should exclude Del Monte's proffered expert opinions and testimony at trial.

## II. BACKGROUND

***AOL removes Evox images from Autoblog and terminates the license.*** Evox granted AOL (a legal predecessor to Yahoo Inc.) a license to use Evox images on AOL's Autoblog website in April 2014. Dkt. 147-1 ¶¶ 1–3, 21. AOL terminated the license in February 2017. Dkt. 147-1 ¶¶ 4, 34. Before terminating, AOL took steps to remove Evox images from Autoblog. *Id.* ¶¶ 23–29, 31–33; Dkt. 144-2 at 737, 742–44. In December 2016, Tom Pitts—the principal architect for Autoblog—rewrote software

1

code to ensure Evox images no longer appeared on the product side of the Autoblog site and that images from a different vendor appeared instead. Dkt. 147-1 ¶¶ 28–29; Dkt. 144-2 at 742–44. Although Pitts learned nearly two years later that he inadvertently missed swapping out Evox images on the Compare part of Autoblog, all Evox images were deleted from AOL's systems in June 2017. Dkt. 144-2 at 72–74, 744–45.

***Evox and Del Monte investigate AOL's server.*** On April 12, 2017, Evox began investigating AOL and learned that Evox images remained on AOL's server. Dkt. 144-3 at 6; Dkt. 147-1 ¶ 73. Tyler Alexander, a member of Evox's compliance department, developed an automated program to remotely "scrape" AOL's server, and compile a list of Evox images on the server. Dkt. 147-1 ¶¶ 43–48, 53–60, 73–79. Evox asked Michael Del Monte—a former intellectual property lawyer, and Evox's sole consultant from 2007 to 2017—to "verify" and "confirm" the results of Evox's investigation. *Id.* ¶¶ 61–70, 85–88; Mathur Decl. Ex. 30 at 34:23–35:6, 39:21–41:4; *id.* Ex. 31 at 17:15–18:3, 27:12–17 (Del Monte has done "40 to 50" projects for Evox).[2] Del Monte did so and prepared three reports in June and July 2017 repeating Evox's conclusions. Ex. 32–34. Evox did not reveal these conclusions to AOL until August 3, 2018. Ex. 35.

***Evox discloses Del Monte as a fact witness, a consulting expert, and an expert.*** Evox filed this lawsuit in March 2020 (Dkt. 1), and disclosed Del Monte as a fact witness in its initial disclosures. Ex. 36 at 2. Although Del Monte was disclosed as a fact witness, Evox has referred to him as a "consulting expert" throughout this case. Exs. 37–39. Del Monte prepared another report in January 2022 in his dual capacity as an investigator and consulting expert. Ex. 40; Ex. 31 at 30:1-17 (testifying he prepared the report as an investigator); *id.* at 48:5-15 (testifying he prepared the report as a consulting expert); *id.* at 45:20–47:2 (testifying he prepared the report as a fact witness and consultant, and does not know "the difference … between consultant and fact witness").[3]

---

[2] Unless stated otherwise, all Exhibit citations are to the Declaration of Shaun Mathur filed in support of this motion.
[3] To the extent Evox claims that Del Monte's January 2022 report is an expert report, it should be stricken because Evox produced it on February 4, 2022, 238 days after the
*(Cont'd on next page)*

Months later, Evox said it wanted Del Monte to also serve as an expert witness, and he produced an "expert report" on March 10, 2023. Ex. 41 ("Report" or "Rpt.").

### III.   ARGUMENT

#### A.   Del Monte May Not Offer Expert Testimony On The Facts Of The Case And Any Investigations Performed In His Capacity As A Fact Witness

"An expert witness may not usurp the jury's role in making factual determinations." *In re Twitter, Inc. Sec. Litig.*, 2020 WL 9073168, at *9 (N.D. Cal. Apr. 20, 2020). Nor may an expert proffer expert opinion on "what actually happened in the specific case at hand." *S.E.C. v. Daifotis*, 2012 WL 2051193, at *1 (N.D. Cal. June 7, 2012); *see also Fujifilm Corp. v. Motorola Mobility LLC*, 2015 WL 1265009, at *12 (N.D. Cal. Mar. 19, 2015) (striking expert testimony providing "no more than a factual narrative"); *Jimenez v. Sambrano*, 2009 WL 2382622, at *2 (S.D. Cal. July 31, 2009). That is especially true where, as here, a witness serves a dual role as fact and expert witness, since a fact witness "who testifies as an expert [may] receive 'unmerited credibility' for lay testimony" (*United States v. Freeman*, 498 F.3d 893, 903 (9th Cir. 2007)), given the "aura of special reliability and trustworthiness surrounding expert testimony." *United States v. Dukagjini*, 326 F.3d 45, 53 (2d Cir. 2003). Thus, a dual witness may not offer expert opinion "based on his general knowledge of the investigation." *Freeman*, 498 F.3d at 903; *see also*, *e.g.*, *Dukagjini*, 326 F.3d at 55.

This is precisely what Evox intends for Del Monte to do at trial: present purported "fact testimony" as an "expert." For example, Del Monte spends a full page of his Report repeating his investigative findings from July 2017 (*compare* Rpt. ¶¶ 19–22, *with* Ex. 34), and another page repeating the analysis he performed in January 2022, before he was designated as an expert witness (*compare* Rpt. ¶¶ 23–27, *with* Ex. 40). The Court should preclude Del Monte from offering expert opinions based on his purported

---

close of expert discovery and without seeking leave from the Court, and Del Monte testified he would not be offering expert opinion on any purported facts in his 2022 report. Dkt. 50; Ex. 31 at 44:19–46:8, 73:22–74:7; Ex. 53; Fed. R. Civ. P. 16(b)(4), 26(a), 37(c); *see also Wong v. Regents of Univ. of Calif.*, 410 F.3d 1052, 1062 (9th Cir. 2005); *MGA Entm't, Inc. v. Dynacraft BSC, Inc.*, 2019 WL 13244543, at *2–3 (C.D. Cal. Apr. 30, 2019).

1 findings as an investigator, and serving as an advocate for Evox and his own
2 investigation—especially since he admitted that he would not be offering expert opinion
3 on the purported facts in his 2017 and 2022 reports. Ex. 31 at 41:3-6, 44:19–46:18, 60:4-
4 16, 73:22–74:7, 124:1-7. Nonetheless, Evox clearly is trying to bolster Del Monte's
5 findings as an investigator under the guise of expert testimony—which is especially
6 improper given his dual role as a fact and expert witness. *Freeman*, 498 F.3d at 903.

### B. Del Monte's Proffered Opinions Are Not Reliable

Expert testimony must "rest[] on a reliable foundation." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 497 (1993). "As a prerequisite to making the Rule 702 determination that an expert's methods are reliable, the court must assure that the methods are adequately explained." *United States v. Hermanek*, 289 F.3d 1076, 1094 (9th Cir. 2002); *see also Daubert*, 43 F.3d at 1319 n.11 (proponent of expert "must explain the expert's methodology and demonstrate in some objectively verifiable way that the expert has both chosen a reliable scientific method and followed it faithfully"); Fed. R. Civ. P. 26(a)(2)(B)(i). To determine reliability, a court "must assess the expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014). "Under *Daubert*'s testability factor, the primary requirement is that someone else using the same data and methods be able to replicate the results." *Id.* at 1047. An expert's conclusions are unreliable where he "fail[s] to identify [the] methodology" he used (*Perez v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 13070406, at *6 (N.D. Cal. July 19, 2012)), and his report "does not allow any other expert to replicate" his results. *Wyatt Tech. Corp. v. Malvern Instr., Inc.*, 2010 WL 11505684, at *6 (C.D. Cal. Jan. 25, 2010); *see Freeman*, 498 F.3d at 901; *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1056 (9th Cir. 2003).

Del Monte did not explain how he reached any of his conclusions. He says he "compared … two datasets to the 14,907 pages [he] tested in June 2017," and that "it is possible to correlate the displayed pages with the images belonging to the compared

cars" "using the date from [his] June 2017 scan." Rpt. ¶¶ 25–27.[4] He also says he analyzed a spreadsheet with Bates number AOL032304 (the "'04 file") and identified 97 webpages he believes were erroneously included in the '04 file (*id.* ¶¶ 32–35), compared the '04 file to another spreadsheet to identify 244 webpages he believes were erroneously included in the '04 file (*id.* ¶¶ 36–38), and compared alleged screenshots of Compare webpages to the '04 file (*id.* ¶¶ 39–42). And he says he compared two page view data sets to a spreadsheet attached as an exhibit to Yahoo expert David Kalat's report (*id.* ¶¶ 49–50), and used another file to calculate how many of the images identified in the two data sets and exhibit to Mr. Kalat's report were "retrieved by AOL on or after February 8, 2016" (*id.* ¶¶ 47, 51–52).

Del Monte's Report does not explain how he conducted any of these analyses. He testified that he used a software program known as SQL to perform these analyses, and that a certain level of technical ability is required to use that program. Ex. 31 at 67:16–69:14. But as he admitted throughout his deposition, he did not explain in his Report how he actually performed these analyses, and there is no paragraph or exhibit someone could reference to replicate his work and assess the reliability of his methodology and the correctness of his conclusions. *See id.* at 69:8-14, 71:20–73:3, 90:7-25–92:10, 123:3–124:9. For example, Del Monte did not provide a copy of the SQL code he used to perform he analyses so someone could replicate his work (by contrast, Yahoo's expert David Kalat did, *see* Dkt. 144-2 at 533, 577). Rather, Del Monte merely identifies data sets and provides his conclusions—quintessential *ipse dixit* that courts need not admit. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[A] district court [need not] admit opinion evidence that is connected to existing data only by the *ipse dixit* of the

---

[4] Del Monte's Report does not actually identify the images belonging to the vehicles on the displayed pages, but he indicated during his deposition that he would offer expert opinion at trial on the number of images on those pages. Ex. 31 at 71:17–72:21. An expert may not supplement their opinions for the first time on the witness stand, and so the Court should preclude Del Monte from attempting to offer any undisclosed expert opinions at trial. *See*, *e.g.*, *V5 Techs., LLC v. Switch, Ltd.*, 2020 WL 6684972, at *2 (D. Nev. Nov. 12, 2020); *Maddox ex rel. D.M. v. City of Sandpoint*, 2019 WL 3538949, at *3 (D. Idaho Aug. 1, 2019); *Cousyn for Cousyn Grading & Demo, Inc. v. Ford Motor Co.*, 2019 WL 6434922, at *5 (C.D. Cal. July 17, 2019).

expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). Because Del Monte failed to explain how he reached his results, and his Report does not enable another expert to replicate them, the Court should preclude him from offering expert testimony at trial. *See Clausen*, 339 F.3d at 1056; *Perez*, 2012 WL 13070406, at *6; *Wyatt*, 2010 WL 11505684, at *6.

### C. Del Monte's Opinions Concerning The '04 File Are Unhelpful, Improper, And Speculative

Del Monte's proffered testimony on the '04 file" should be excluded because it is irrelevant since neither party relies on it, improper credibility opinion, and speculative.

In November 2021, Yahoo produced numerous spreadsheets of raw Google Analytics data identifying the Compare webpages that were viewed in 2017. Dkt. 144-2 at 745. In April 2022, Yahoo produced additional spreadsheets that Tom Pitts created using the raw Google Analytics data. *Id.* at 760. The '04 file is one of the spreadsheets Pitts created and Yahoo produced in April 2022, and it identifies Compare webpages that were viewed in 2017 but did not contain Evox images. *See* Rpt. ¶¶ 28, 30.

In mid-2022, the parties' counsel exchanged several emails on the data Yahoo produced, even though fact discovery had long closed. In one exchange, Evox's counsel argued the '04 file "contains 71 rows in which only one car was selected" and should have shown Evox images. Ex. 18 at 11. In response, Yahoo's counsel said "AOL did not possess Evox images for the vehicles listed in the 71 rows" except for one vehicle. *Id.* at 5–6. In another exchange, Evox's counsel shared one of the screenshots that Evox purportedly took in April 2017, and asserted that the URL for the webpage depicted in the screenshot was incorrectly in the '04 file. *Id.* at 4–5. In response, Yahoo's counsel wrote that none of the screenshots appeared in the raw data collected and maintained by Google Analytics, and that the specific URL Evox's counsel identified did not correspond to the webpage depicted in the screenshot. *Id.* at 1; *see* Dkt. 144-2 at 761.

In January 2023, Yahoo produced the expert report of David Kalat. Dkt. 144-2 at 507. Mr. Kalat concluded that no more than 5,115 to 7,559 Evox images could possibly

have been displayed to two or more people from February 2017 (when the license terminated) to late June 2017 (when all Evox images were deleted from AOL's systems). *Id.* at 527–534. In arriving at his conclusions, *Mr. Kalat did not rely on the '04 file at all*, but rather based his own analysis on the raw Google Analytics data. *Id.* at 524, 526.

Nonetheless, Del Monte's Report—produced in March 2023—repeats the emails between counsel, attacks the credibility of Yahoo's counsel, and argues that the '04 file is incomplete. Rpt. ¶¶ 28–44. The Court should preclude Del Monte from offering any such testimony, because it is irrelevant, improper credibility opinion, and speculative.

***Irrelevant.*** "Rule 702 … requires that the evidence or testimony assist the trier of fact to understand the evidence or to determine a fact in issue. This condition goes primarily to relevance." *Daubert*, 509 U.S. at 591. "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). By contrast, "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591. Here, Del Monte's opinions on the veracity of the '04 file are completely irrelevant. Yahoo's expert Mr. Kalat did not rely on that file in forming his opinions. Dkt. 144-2 at 524 & n.24, 526. And Yahoo does not intend to introduce the file at trial to prove the listed webpages would not have shown Evox images. Rather, Yahoo intends to present Mr. Kalat's analysis of the Google Analytics page view data. As Del Monte admitted during his deposition, Mr. Kalat's decision not to rely on the '04 file in forming his opinions renders Del Monte's opinions on the veracity of the '04 file irrelevant. *See* Ex. 31 at 75:6–78:10 (Del Monte admitting that Mr. Kalat's opinion "erases the need to address" the '04 file, and that his "expert opinion about that file may be irrelevant"). Thus, permitting Del Monte to testify about the file would serve only to confuse jurors into believing they must review the '04 file to render a verdict when they do not. Fed. R. Evid. 403.

***Improper.*** "An expert witness may not usurp the function of the jury to … determine credibility." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 2018 WL

6511146, at *6 (N.D. Cal. Dec. 11, 2018); *see Daifotis*, 2012 WL 2051193, at *2. Nor may an expert witness "serve as a mouthpiece" for one side's lawyers. *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 5148390, at *5 (N.D. Cal. Nov. 6, 2017). Del Monte does both. He admitted he intends to offer expert opinion about whether Yahoo's counsel's description of the '04 file should be believed. Ex. 31 at 81:24–82:18; *id.* at 51:25–52:5. He also admitted several paragraphs of his Report simply summarize emails between counsel, repeating the same arguments Evox's counsel made in those emails. *Id.* at 81:5-23. Indeed, a comparison of Del Monte's Report to the emails of Evox's counsel show that Del Monte's opinions "are nothing more than lawyer argument dressed up as expert opinion." *Waymo*, 2017 WL 5148390, at *5; *compare* Rpt. ¶¶ 29–43, *with* Ex. 18 at 4–5, 10–11. This case is even worse than *Waymo,* because the "expert" is a former lawyer parroting the opinions of another lawyer. Del Monte's opinions should be excluded.

***Speculative.*** In the final paragraph of his purported analysis of the '04 file, Del Monte surmises that Autoblog's design choices for the Compare tool "make little sense," and postulates that it "would be confusing to a user of the website" if they saw no images on certain webpages of the site. Rpt. ¶ 44. This opinion is irrelevant to this copyright infringement action. It also is impermissibly speculative, as an expert may not speculate about a defendant's statement of mind or motivations for engaging in certain conduct. *See In re Twitter*, 2020 WL 9073168, at *7. It should be excluded.

### D. Del Monte's Proffered Testimony On The Alleged Use Of Evox Images After The License Period Is Unhelpful And Not Tied To The Facts Of The Case

The Court also should exclude Del Monte's proffered opinions concerning the use of Evox images outside the license's one-year tail period as unhelpful and irrelevant. Rpt. ¶¶ 45–52. Expert testimony is not helpful or relevant if not "sufficiently tied to the facts of the case." *Daubert*, 509 U.S. at 591. Put another way, if an expert's opinion does not "fit" the facts of the case, then it cannot serve a helpful purpose to the jury. *Id.*

The parties' license authorized AOL to publicly display an Evox image "for a period of up to one (1) year from the date [the] Image is displayed and distributed by

1  AOL, even if the Agreement is terminated before that period ends," so long as AOL first
2  "displayed and distributed" the image "before termination occurred." Dkt. 144-2 at 8;
3  *see* Ex. 42 at 2 (Evox Contracts Manager stating that this provision applies only "upon
4  termination of the Agreement"). For example, if AOL received an image from Evox on
5  December 1, 2016, and AOL first displayed the image on Autoblog on January 1, 2017,
6  the license permitted AOL to continue displaying the image publicly until January 1,
7  2018—even if the license terminated in February 2017. Accordingly, the one-year
8  period for an image begins only when AOL first displayed the image, and Evox bears
9  the burden to prove when such first display occurred for each image at issue. *See* Ninth
10 Cir. Model Jury Instr. No. 17.25A; *Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948,
11 954 (9th Cir. 2018); *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018).

12  Del Monte attempted to account for this "one-year tail provision," but his analysis
13 ignores the language of the license. In fact, Del Monte admitted he had not seen, and
14 did not ask to see, the license. Ex. 31 at 113:11-25. Instead, Del Monte said that he was
15 "asked to assume that AOL had the right to use any particular Evox image for one year
16 following when it first *received* the image"; that he was "asked to calculate how many
17 images listed in Mr. Kalat's Exhibit 13 were *retrieved* by AOL on or after February 8,
18 2016," and "only displayed within a year after they were *retrieved*"; and that 1,070 out
19 of 28,333 images Mr. Kalat identified (for one of his calculations) "were only displayed
20 within one year following the *download date*." Rpt. ¶¶ 45, 51–52 (emphases added).

21  But the date AOL *received* and *downloaded* each image is not relevant to any
22 issue in the case, much less to determining the date the one-year tail period began for
23 any image allegedly infringed. Del Monte did not tether his analysis to the relevant
24 date—i.e., when AOL first "*displayed and distributed*" each image. And he admitted
25 that accounting for the date AOL first displayed each image would entail "a completely
26 different analysis," and that his conclusions would "change a lot" had he performed that
27 analysis. Ex. 31 at 130:14–131:19. Because Del Monte did not tether his analysis to the
28 date AOL first displayed any image, his opinion on the one-year provision is not "tied

to the facts of the case" and should be excluded. *Daubert*, 509 U.S. at 591.[5]

### E. Del Monte's Proffered Expert Testimony Is Inadmissible Under Rule 403

At a minimum, the Court should exclude Del Monte's proffered expert opinions given the unfair prejudice, confusion, cumulativeness, and waste of time that introducing his opinions would cause. Fed. R. Evid. 403; *see Daubert*, 509 U.S. at 595.

There is a substantial risk of unfair prejudice, since "expert testimony by a fact witness … can inhibit cross-examination … because a failed effort to impeach the witness as expert may effectively enhance his credibility as a fact witness." *Freeman*, 498 F.3d at 903. That risk is heightened "because some jurors will find it difficult to discern whether [Del Monte] is relying properly on his general experience and reliable methodology, or improperly on what he has learned from" his investigation. *Id.* The "lack of clarity regarding [Del Monte's] dual roles create[s] [further] risk that there [is] an imprimatur of scientific or technical validity to the entirety of his testimony." *Id.* Permitting Del Monte to offer his proffered expert opinions would essentially make him a summary witness, and "come dangerously close to usurping the jury's function." *Id.*

Del Monte's testimony also is cumulative, given his anticipated fact witness testimony on his 2017 investigation, and the anticipated testimony of Evox's other expert, Jonathan Hochman, and Yahoo's expert, Mr. Kalat, both of whom also analyzed the page view data. Del Monte adds little to the conversation. And he is nothing more than an "advocate[] dressed up like [a] sworn witness[]" (*Daifotis*, 2012 WL 2051193, at *2), particularly in light of his history of supporting Evox's copyright troll business.

### IV. CONCLUSION

The Court should exclude Del Monte's proffered expert opinions and testimony. To the extent there are any doubts about the impropriety of Del Monte's opinions, Yahoo requests a hearing and opportunity to voir dire him before he testifies before the jury.

---

[5] Del Monte's opinion concerning the one-year period also is improper because it rebutted the opinions of Yahoo's expert, Mr. Kalat, even though Del Monte was not disclosed as a rebuttal expert, as Evox's counsel stated on the record during Del Monte's deposition. *See* Ex. 31 at 76:2-19.

DATED: June 7, 2023

SCOTT A. EDELMAN
PERLETTE MICHÈLE JURA
ILISSA SAMPLIN
SHAUN A. MATHUR
GIBSON, DUNN & CRUTCHER LLP

By: */s/ Scott A. Edelman*
Scott A. Edelman

Attorneys for Defendant Yahoo Inc.