**CALLAHAN & BLAINE, APLC**
Edward Susolik (Bar No. 151081)
Ed@callahan-law.com
Michael J. Sachs (SBN 134468)
MJS@callahan-law.com
Jason Casero (Bar No. 263933)
jcasero@callahan-law.com
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
Telephone: (714) 241-4444
Facsimile: (714) 241-4445

Attorneys for Plaintiff EVOX PRODUCTIONS LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA -- WESTERN DIVISION

| | |
|---|---|
| EVOX PRODUCTIONS LLC, a Delaware limited liability company,<br><br>            Plaintiff,<br><br>   v.<br><br>YAHOO INC.,<br><br>            Defendant. | **CASE NO. 2:20-cv-02907-MEMF(JEMx)**<br><br>**EVOX'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE AND ARGUMENT CONCERNING THE PARTIES' DISCOVERY DISPUTES**<br><br>Hearing Date: July 12, 2023<br>Time:          9:00 a.m.<br>Judge:         Ewusi-Mensah Frimpong<br><br>Action Filed: March 27, 2021<br>Trial Date:    July 24, 2023 |

## I.   INTRODUCTION

It should come as no surprise that Defendant is eager to exclude the details of discovery disputes that occurred in the course of this litigation. To be clear, there is only one "discovery dispute" at issue: Defendant's months-long campaign to withhold key evidence that, when Defendant was eventually ordered to disclose it, undeniably altered the trajectory of this litigation.

Early in this case, Defendants almost reveled in the absence of any records that could establish their liability. (Dkt. No. 70 (Defs.' Opp. To Pl.'s Mot. To Amend Scheduling Order)(EVOX "cannot allege with facts adduced through discovery, that Defendants actually served and disseminated Evox images") (emphasis added).) After all, Defendant's had allowed to be erased the records that would have recorded precisely how many times EVOX images had been served after the license period (*i.e.*, server logs) in the ordinary course of business. EVOX later learned *after* the close of discovery, however, that Defendants still maintained page view analytics data that recorded how many times pages containing the EVOX images were served after the license period.

Although the page view analytics data was clearly responsive to prior discovery requests, and Defendant had an obligation to produce it pursuant to FRCP 26(e)(1)(A), it refused – and for obvious reasons. The existence of the page view analytics data fatally undermined Defendant's contention that no evidence of infringing activity existed. And it was embarrassing (or it should have been), given that Defendant's designated representatives repeatedly testified that there were no records that could substantiate Defendant's use of EVOX images after the License Agreement was terminated. Indeed, when asked in an interrogatory how Defendant could determine when EVOX images were served, Defendant responded that it could not "make determination of the type referenced in this interrogatory." (Declaration of Jason Casero ("Casero Decl.") Ex. 1 at 11:23-24.)

1  Now that Defendant has been forced to acknowledge and produce the page view analytics, it has also been forced to address their significance. Although originally disclaiming that evidence of their liability existed, their very own expert has now been forced to acknowledge that up to 28,358 EVOX images were served after the License Agreement was terminated. (*See* Dkt. 183 ("Mathur Decl.") Ex. 23 (Expert Report of David Kalat).) A minimum statutory damage award for that number of images alone is over $20 million – before taking into account the images that Defendant actively linked to their Autoblog website to bolster the quality of its image offerings.

This represents quite the reversal of fortune, which explains why Defendant flouted their discovery obligations for months. But just because the delay can be explained, it does not mean that it was justified. A party's conduct during litigation is just one of the factors that a jury is permitted to consider when setting the appropriate amount of statutory damages. Accordingly, Defendant's effort to reject reference to these tactics should be rejected

## II. BACKGROUND

Defendant's self-serving recitation of the facts is predictable. As it has throughout this litigation, its primary tactic is to paint itself as the victim. Hence, it repeats its misleading claims like "Evox failed to comply with its contractual duty to 'promptly inform'" Defendant of the infringement, as though Evox is responsible for Defendant's continuing use of copyright material after the license period. (Def.'s MIL No. 1 at 3:2-3.) As set forth in separate briefing, the actual language of the parties' license agreement expressly contradicts Defendant's claim. (*See* Pl.'s MIL No. 2 re: contract breach.)

Next, Defendant lauds itself for its cooperation throughout the discovery process. (*Id*. at 3:9-11 (trumpeting the number of documents produced, discovery requests propounded, and depositions conducted).) Of course, the amount of discovery exchanged is immaterial when one party withholds information that is not

only responsive to discovery requests, but also critical to the other party's case. That is precisely what has happened here.

Had Defendant simply failed to produce the page view analytics with the good faith belief that they were not responsive to discovery requests, that might be excusable. But those are not the facts. Through an analysis of deposition transcripts and other information, EVOX first deduced *after* the close of discovery that (1) page view analytics existed for the relevant time period, and (2) that they could serve as a surrogate for server logs in establishing how many EVOX images Defendant served without authorization. Because the page view analytics were clearly responsive to prior discovery requests, EVOX requested that they be disclosed pursuant to Fed. Rule Civ. Proc. 26(e). Defendant refused.

For the next several months, EVOX had to fight for disclosure of the page view analytics. First, EVOX had to move to amend the scheduling order to allow the filing of a discovery motion. (Dkt. 64.) After prevailing on that motion, EVOX was forced to file a motion to compel with Magistrate Judge McDermott. (Dkt. 102.) Despite Defendant's efforts to shield disclosure, the outcome should never have been in question when comparing the merits of the parties' respective positions. Judge McDermott granted EVOX's motion and explained:

> Defendants have not demonstrated any legal prejudice that would follow from granting the Motion. The District Court recently denied Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint ("TAC"). (Dkt. 109.) It makes no sense to authorize Plaintiff to proceed with the TAC but then preclude the evidence needed to prove its copyright claim on procedural grounds, in the absence of any prejudice.

(Dkt. 119 at 3.)

Defendant produced the page view analytics in November 2021. For the purpose of their motion, however, they claim that they "produc[ed] more than a dozen spreadsheets of detailed page view data and analysis in November 2021, April 2022, and September 2022." (Def.'s MIL No. 1 at 3:25-26.) What Defendant

omits, however, is that all of the spreadsheets produced after November 2021 were designed to reduce their potential liability.  Because the production of the page view analytics was ordered after the close of discovery, EVOX never had an opportunity to depose any of Defendant's personnel in order to interpret the data.  Defendant used this to its advantage.  For the next several months, it strategized ways to characterize the data in such a way that minimized the number of EVOX that were displayed without authorization with the knowledge that it would be difficult for EVOX to test the characterizations.  For instance, in a June 13, 2022 email explaining a spreadsheet that was produced in April 2002, Defendant's counsel wrote:

> AOL032304 – identifies each exterior and interior webpage viewed on Autoblog's Compare feature from Jan. 1, 2017 through Aug. 30, 2017 that contained no images, and each vehicle being compared on each webpage. A webpage would contain no images if AOL did not possess overlapping images for each vehicle being compared.

(Mathur Decl. Ex. 7 (6/13/22 email).)  These characterizations of the data were later called into question.  Not only are they undermined by the expert report of Michael Del Monte (Mathur Decl. Ex. 6), Defendant's own expert has disregarded them altogether.  (Mathur Ex. 23 (Kalat Report) ¶56.)

Thus, Defendant has understandably characterized its conduct in resisting disclosure of the page view analytics data in the best possible light.   The reality, however, is that Defendant vigorously resisted complying with its discovery obligations for a simple reason: it did not want to disclose clear evidence of its liability.

### III. ARGUMENT

Defendant seeks to exclude information related to its refusal to disclose the page view analytics data because it is "irrelevant to the issues to be tried, inadmissible hearsay, and unfairly prejudicial, confusing, misleading, and wasteful." (Def.'s MIL No. 1 at 5:10-11 (citing to FRE 401-403, 801-801).)  The grounds for

exclusion, however, disregard the fact that this information is relevant to the resolution of the dispute.

### A. A Jury May Consider Conduct During Litigation When Determining the Proper Measure of Statutory Damages

EVOX is pursuing statutory damages in this matter pursuant to 17 U.S.C. § 504(c). The manner in which Defendant has conducted this litigation is relevant to the jury's determination of the appropriate measure of statutory damages, between the specified maxima and minima of $750 to $30,000 per infringement." *See Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998). The Ninth Circuit explained in *Dream Games of Arizona, Inc. v. PC Onsite*, that a party's "conduct during litigation" is among the factors commonly relied upon by decisionmakers in setting statutory damages awards." 561 F.3d 983, 993 (9th Cir. 2009). In *Dream Games*, the Ninth Circuit focused specifically on the plaintiff's conduct. *Id.* at 993. But the same principal applies, regardless of the party. If the conduct of the plaintiff during litigation can be used to *reduce* a statutory damages award, it necessarily follows that conduct of the defendant can be used to *increase* a statutory damages award.

Other jurisdictions have endorsed the view that a litigant's conduct is a relevant factor when assessing statutory damages. For instance, in *Warner Bros. Ent. v. X One X Prods.*, 840 F.3d 971, 977 (8th Cir. 2016), the Eighth Circuit endorsed the trial court's consideration of the "discovery history" when assessing the proper measure of statutory damages. It noted:

> "This case has had a <u>tortured and laborious discovery history</u>," in which [defendant's] intransigence rendered calculating actual damages impossible due to missing or inaccurate records.

(Emphasis added.) Thus, conduct in discovery is just one factor that can inform a statutory damages award. *See Curet-Velazquez v. ACEMLA de Puerto Rico*, Inc.,

656 F.3d 47, 59 (1st Cir. 2011)(award of maximum statutory damages proper where Defendant did not cooperate in damages calculation);

### B. The Factors a Jury Can Consider When Assessing a Statutory Damage Award is Purposely Broad

As a general principle, courts have endorsed a broad view of what factors can be considered when assessing a statutory damage award in a copyright infringement action. In *F. W. Woolworth Co. v. Contemp. Arts*, 344 U.S. 228, 232 (1952), the Supreme Court explained:

> Few bodies of law would be more difficult to reduce to a short and simple formula than that which determines the measure of damage recoverable for actionable wrongs. The necessary flexibility to do justice in the variety of situations which copyright cases present can be achieved only by exercise of the wide judicial discretion within limited amounts conferred by this statute.

If the Court were to exclude evidence of Defendant's intransigence in discovery, it would deprive the jury of the opportunity to consider a factor that courts have already recognized, and that falls within the ambit of Supreme Court precedent.

### IV. CONCLUSION

In light of the foregoing, this Court should deny Defendant's Motion *in Limine* No. 1.

Dated:  June 21, 2023

CALLAHAN & BLAINE, APLC

By: _____
Edward Susolik
Michael J. Sachs
Jason Casero
Attorneys for Plaintiff
EVOX Productions, LLC

# CERTIFICATE OF SERVICE

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CALIFORNIA, CENTRAL DIVISION

# EVOX PRODUCTIONS LLC, v. AOL INC.

## Case No.: 2:20-cv-02907-FMO-JEM

I am employed in the County of Orange, State of California. I am over the age of 18 years and am not a party to the within action; my business address is **3 Hutton Centre Drive, Ninth Floor, Santa Ana, California 92707**.

On June 21, 2023, I served the following document(s) described as

**EVOX'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE AND ARGUMENT CONCERNING THE PARTIES' DISCOVERY DISPUTES**

on the interested parties in this action by placing: ☐ the original ☒ a true copy to the following e-mail addresses as follows:

☒ **BY ELECTRONIC MAIL:** I electronically filed such document with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all other parties appearing on the docket sheet as listed below:

Scott Edelman, sedelman@gibsondunn.com

Perlette Michele Jura    pjura@gibsondunn.com, PACER-CA@gibsondunn.com, schita@gibsondunn.com

Ilissa Stacy Samplin    isamplin@gibsondunn.com, DSatanove@gibsondunn.com, PACER-CA@gibsondunn.com

Scott A. Edelman    sedelman@gibsondunn.com

Shaun Akhil Mathur    SMathur@gibsondunn.com, mreagan@gibsondunn.com

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on June 21, 2023, at Santa Ana, California.

*/s/ Maria Martinez*

Maria Martinez   mmartinez@callahan-law.com