O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVOX PRODUCTIONS LLC,<br><br>　　　　　　　Plaintiff,<br>　　v.<br><br>YAHOO, INC.,<br><br>　　　　　　　Defendants. | Case No.: 2:20-cv-02907-MEMF-JEMx<br><br>**ORDER GRANTING PARTIAL SUMMARY JUDGMENT IN FAVOR PLAINTIFF PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(F) [ECF NOS. 144, 235, 245, 248]** |

　　　　Before the Court are the parties' briefs regarding the Court's notice of intent to grant summary judgment in favor of Plaintiff and partial summary judgment in favor of Defendant pursuant to Federal Rule of Civil Procedure 56(f). ECF Nos. 245, 248. For the reasons stated herein, the Court hereby **GRANTS SUMMARY JUDGMENT in favor of Evox as to Yahoo's implied license defense and DENIES SUMMARY JUDGMENT as to a select number of the alleged images.**

　　//
　　//

## I. Background

### A. Factual Background

This action stems from a dispute over a licensing agreement for automobile photographs. In April of 2014, Plaintiff Evox Productions, LLC ("Evox") contracted with Defendant Yahoo, Inc. ("Yahoo")[1] to allow Yahoo to use photographs owned by Evox. Evox alleges Yahoo infringed its copyright by making unauthorized use of some of those images after Yahoo terminated the contract in February of 2017. A more detailed discussion of the factual background can be found in the Court's order on the parties' motions for summary judgment. *See* ECF 235 ("MSJ Order") at 7–26. The Court incorporates those same facts here. Specifically at issue is how many images were publicly displayed between February of 2017 (when the contract terminated) and August of 2017 (when Yahoo dismounted its server). MSJ Order at 40.

### B. Procedural Background

Evox filed suit on March 27, 2020. ECF No. 1. After a series of motions, Evox filed a Third Amended Complaint on July 9, 2023. ECF No. 87 ("3AC"). The Third Amended Complaint alleges one claim of copyright infringement, for violating Evox's exclusive right to publicly display as many as 281,721 images. 3AC ¶¶ 87–95. Yahoo asserts 25 affirmative defenses, including estoppel, unclean hands, and implied license. *See* ECF No. 120.

On March 23, 2023, both parties moved for summary judgment. ECF No. 144 ("MSJ"). Yahoo brought its motion on three grounds: (1) Evox granted Yahoo an implied license that authorized any alleged infringement; (2) no more than 7,559 images could have been publicly displayed and the Court should grant partial summary judgment as to the remaining 274,162 images; and (3) any infringement was innocent or not willful and the Court should grant partial summary judgment as to the issue of statutorily reduced or enhanced damages. Evox argued the Court should

---

[1] Defendants AOL, Inc. ("AOL"), Oath, Inc., ("Oath"), and Verizon Media, Inc. ("Verizon") (collectively, the "AOL Defendants") were the named defendants in the parties' joint Motions for Summary Judgment. ECF No. 144 ("MSJ"). Subsequently, the parties stipulated to substitute the AOL Defendants for Defendant Yahoo, Inc. ("Yahoo"). *See* ECF No. 161. While the Court referred to the AOL Defendants in the MSJ Order, it now refers to the Yahoo Defendants.

grant partial summary judgment for the limited purpose of establishing that Yahoo is liable for copyright infringement with respect to seven images.

On June 29, 2023, the Court held a hearing and gave the parties an opportunity to be heard regarding its tentative order to deny Defendant's motions and grant Plaintiff's motion in part. ECF No. 226.

On July 10, 2023, the Court issued its order on the motions for summary judgment as follows. First, the Court denied Yahoo's motion to grant summary judgment as to the implied license defense and gave notice, pursuant to Federal Rule of Civil Procedure 56(f), that it intended to grant summary judgment in favor of Evox on this issue. MSJ Order at 32. Second, the Court denied Yahoo's motion to grant partial summary judgment as to Yahoo's proposed number of select images but gave notice of its intent grant partial summary judgment in favor of Yahoo as to a smaller portion of the images. MSJ Order at 40–41. Specifically, the Court found Evox had presented evidence that, at best, showed that, at most, 32,938 Evox images were viewable during the February to August time frame. *Id.* Therefore, the Court intended to grant partial summary judgment as to the remaining 248,783 images. *Id.* Third, the Court denied Defendant's motions to grant summary judgment as to the findings of innocence and willful infringement. MSJ Order at 42. Finally, the Court granted Evox's request as to five of the seven images. MSJ Order at 44. The parties timely filed their briefs in response to the Court's Rule 56(f) Notice. ECF Nos. 245 (Pl.'s Br.) and 248 (Def.'s Br.).

On July 12, 2023, the Court held a hearing on the parties' several Motions in Limine. ECF Nos. 164, 165, 166, 169, 170, 171, 172, 173, 174, 178, 180, 181, 182, 186. Prior to the hearing, the Court provided the parties with a tentative ruling on the Motions in Limine. The tentative ruling made clear that it was "not the final decision of the Court" and that the parties were "strictly prohibited from filing it as an exhibit in any case."

## II. Applicable Law

Summary judgment should be granted if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Natl'l Ass'n of Optometrists & Opticians v.*

*Harris,* 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248. A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Chevron Corp. v. Penzoil Co.,* 974 F.2d 1156, 1161 (9th Cir. 1992). If the nonmoving party fails to produce enough evidence to create a genuine dispute of material fact, the motion for summary judgment shall be granted. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986) ("Rule 56(c) mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.").

Under Federal Rule of Civil Procedure 56(f), a district court may sua sponte grant summary judgment if the parties have "notice and a reasonable time to respond." Fed. R. Civ. P. 56(f); *KST Data, Inc. v. DXC Technology Company,* 980 F.3d 709, 714 (9th Cir. 2020). Specifically, the court may "(1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f). "Sua sponte grants of summary judgment are only appropriate if the losing party has 'reasonable notice that the sufficiency of his or her claim will be in issue.'" *Greene v. Solano Cnty. Jail*, 513 F.3d 982, 990 (9th Cir. 2008) (quoting *Buckingham v. United States*, 998 F.2d 735, 742 (9th Cir. 1993)).

### III.  Discussion

The Court has notified the parties of its intent to sua sponte grant (1) summary judgment, as to the issue of Yahoo's implied license defense, in favor of Evox and (2) partial summary judgment, as to 248, 783 images, in favor of Yahoo.

Evox defers to the Court's intent with respect to the first issue and argues *Bell v. Wilmont Storage Services, LLC* forecloses the Court's intent with respect to the second issue. 12 F.4th 1065 (9th Cir. 2021). Yahoo opposes the Court's intent with respect to both issues, arguing it should be permitted to present its implied license defense to a jury and that recent authority requires the Court to grant partial summary judgment as to a slightly larger number of images—253,363 images.

For the reasons stated below, the Court (1) grants summary judgment in favor of Evox as to Yahoo's implied license defense and (2) denies partial summary judgment as to a select number of images. Upon reviewing the parties' briefing and, in light of this Court's holding that *Bell* is controlling law, the Court finds that the record demonstrates a genuine dispute of material fact regarding how many images were viewable (i.e., accessible to anyone with an internet connection) between February of 2017 and August of 2017.

### A. Implied License

Yahoo seeks to raise the affirmative defense of implied license. As explained in the MSJ Order, the Court previously found that the undisputed facts showed that no implied license was created. *See* MSJ Order at 28–32. The Court provided Yahoo an opportunity to submit further briefing as to why the Court should not grant summary judgment to Evox on the implied license defense pursuant to Federal Rule of Civil Procedure 56(f). Having reviewed Yahoo's additional briefing, the Court finds that the undisputed facts indeed show that Evox did not grant Yahoo any implied license, and the Court will therefore grant Evox summary judgment on this issue.

#### i. Relevant Factual Background[2]

Evox and AOL (Yahoo's predecessor in interest) entered a license agreement whereby AOL could use Evox's images. MSJ Order at 8–9. The agreement made clear that upon its termination, "AOL shall cease use of the Images."[3] *Id.* at 9. The agreement gave AOL the right to "store Images internally after termination in AOL's internal storage system for auditing and documentation purposes." *Id.* It also gave Evox the right to audit AOL's records after termination "to verify AOL's

---

[2] These facts are derived from the Findings of Fact in the Court's MSJ Order. *See* MSJ Order at 7–26. The Court considered whether additional findings were necessary in light of Yahoo's additional briefing but holds that Yahoo has not shown that any further facts are relevant to this issue.

[3] Yahoo notes that another contract term allowed AOL to use each image for a period of up to one year after it was delivered and argues that this term granted AOL an express license to use some images after termination. *See* Def.'s Br. at 17. The Court does not find this distinction relevant to whether an implied license was created. The parties do not dispute that AOL's right to use the images did not extend in perpetuity and eventually expired per the terms of the agreement. In light of other facts, the exact date when AOL's express license ended is not dispositive as to whether an implied license was later granted.

compliance." *Id.* Finally, the agreement required Evox to "promptly inform" AOL of "any information related to the Images which could reasonably lead to a claim."[4] *Id.*

The license terminated in February 2017. *Id.* at 13. Shortly after, Evox informed AOL that certain images were still in use. *Id.* AOL removed those images. *Id.*

Beginning in April of 2017, Evox investigated whether AOL was still using Evox's images. *Id.* at 18. The investigation concluded in July of 2017. *Id.* at 21. Evox's investigation revealed to Evox that certain Evox images were still available to the public on AOL's website. *Id.* at 18–21. Evox did not exercise its right to audit AOL's records. *Id.* Evox did not inform AOL of Evox's knowledge that AOL was still using the images. *Id.* at 22. In August of 2018—approximately a year after the investigation ended—Evox sent a demand letter to Yahoo. *Id.*

ii. Discussion

An implied license "is granted when (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 754–55 (9th Cir. 2008). This test was crafted for commissioned works—which Evox's photos were not—and the Ninth Circuit has not clearly defined an implied license test for other contexts. In evaluating whether a copyright owner granted a license to non-commissioned works, district courts examine whether "totality of the parties' conduct indicates an intent to grant" a license to the work. *See Montwillo v. Tull*, 632 F. Supp. 2d 917, 924 (N.D. Cal. 2008); *see also Interscope Recs. v. Time Warner, Inc.*, No. CV101662SVWPJWX, 2010 WL 11505708, *3 (C.D. Cal. June 28, 2010) (collecting cases and explaining that "the issue depends upon the objective manifestation of consent under the totality of the circumstances"). The key question here is the third part of the *Asset Mktg.* test—whether Evox intended that AOL continued to make use of the photos. *See Asset Mktg. Sys.*, 542 F.3d at 755.

---

[4] As the Court explained in its Order on the Motions *in Limine*, this clause only required Evox to inform AOL of information that could lead to a claim by a third party, and not a claim by Evox. *See* ECF No. 251. But even if Yahoo's reading were correct, this clause and Evox's conduct would not create an implied license, for the reasons discussed in this order.

Yahoo argues that, in examining the question of intent, the Court applied the wrong test in its MSJ Order.[5] *See* Def.'s Br. at 14–15. Yahoo argues that the test the Court "need not be applied outside [the] work-for-hire context." *Id.* But Yahoo does not dispute that the key question is whether the parties intended to create an implied license. *See id.* The Court need not settle the issue of what test applies to intent. The Court holds that the undisputed facts show no intent to create an implied license here.

No precedent supports a finding that the facts at issue can lead to an implied license. Evox's conduct—gathering information for litigation and waiting some time to sue—is completely inconsistent with the intent to grant an implied license. The Supreme Court has made clear that "there is nothing untoward" about a copyright owner "waiting to see" whether a lawsuit is in the copyright owner's interest after discovering evidence of infringement. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 655 (2014).

A review of the cases Yahoo cites bolsters the conclusion that an implied license cannot be found based on Evox's conduct here. Courts have found implied licenses where the copyright owner did something that gave a purported licensee reason to believe that the copyright owner intended to allow use of the photos. For example, in the unpublished Ninth Circuit case *Evox Prods., LLC v. Chrome Data Sols., LP*, the alleged infringer sent royalty payments to the copyright owner, and the copyright owner accepted those payments without objection. *See Evox Prods., LLC v. Chrome Data*

---

[5] In its MSJ Order, the Court used the following test to inquire into where there was intent to create an implied license:

> (1) whether the parties were engaged in a short-term discrete transaction as opposed to an ongoing relationship; (2) whether the creator utilized written contracts . . . providing that copyrighted materials could only be used with the creator's future involvement or express permission; and (3) whether the creator's conduct during the creation or delivery of the copyrighted material indicated that use of the material without the creator's involvement or consent was permissible.

MSJ order at 29, citing *Asset Mktg. Sys.*, 542 F.3d at 756. The Court's analysis under this test led to the conclusion that Yahoo was not entitled to a judgment that there was an implied license. *See* MSJ Order at 29–32. Having reviewed Yahoo's recent briefing, the Court finds that application of this test leads to a similar result—that Evox is entitled to a judgment that there was not an implied license—for similar reasons. The Court will therefore not repeat its previous analysis. *See id.* Instead, the Court's analysis in this order focuses on the other authorities Yahoo provided.

*Sols., LP*, No. 22-35113, 2023 WL 1879479, *3 (9th Cir. Feb. 10, 2023). The same key fact—accepting royalty payments without objection—was present in *Experexchange, Inc. v. Doculex, Inc.*, and led to the conclusion that the copyright owner intended an implied license. *See Experexchange, Inc. v. Doculex, Inc.*, No. C-08-03875 JCS, 2009 WL 3837275, *24 (N.D. Cal. Nov. 16, 2009). Here, Yahoo can point to no similar fact.

Yahoo also cites *Parker v. Yahoo!, Inc.*, where a plaintiff set up a website which included copyrighted works, and the court found an implied license based upon a form of silence. *See Parker v. Yahoo!, Inc.*, No. CIV.A. 07-2757, 2008 WL 4410095, *3–*4 (E.D. Pa. Sept. 25, 2008). Plaintiff was aware that he could have indicated to Google via "meta-tags" that he did not want his website included in Google's search results. *See id.* Plaintiff opted not to use these meta-tags, and instead posted a copyright notice on the website, which he argued gave Google constructive notice that the works should not be used. *See id.* The court found an implied license based on Plaintiff's "silence and lack of earlier objection." *Id.* at *4. But *Parker*'s facts are significantly different from those at issue here. The *Parker* Plaintiff was aware that the "well-known industry standard" for indicating copyrighted works should not be used was meta-tags, and chose not to use it, and instead posted a notice that Google could not be reasonably expected to read. *See id.* Here, there is no evidence of any industry standard that would allow Yahoo to use Evox's photos unless Evox indicated otherwise to Yahoo in any specific way.

In other cases where implied licenses were found, the copyright owner took actions clearly showing an intent to benefit from the alleged infringement. In *Baisden v. I'm Ready Prods., Inc.*, the copyright owner purchased allegedly infringing DVDs and distributed them at promotional events. *See Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 497 (5th Cir. 2012). In *Reinicke v. Creative Empire, LLC*, another unpublished Ninth Circuit case, the copyright owner developed and submitted content clearly intended for distribution, but never formally agreed to allow the purported infringer to use it. *Reinicke v. Creative Empire, LLC*, 669 F. App'x 470, 470–71 (9th Cir. 2016). This content drove sales of other products in which the copyright owner had an interest, benefiting the copyright owner. *See id.* This was sufficient to show an implied license. *See id.* In *Photographic Illustrators Corp. v. Orgill, Inc.*, a manufacturer sent copyrighted photos of its products to distributors, showing

a clear intent that the distributors use the photos to sell the products, creating an implied license. *Photographic Illustrators Corp. v. Orgill, Inc.*, 953 F.3d 56, 64–65 (1st Cir. 2020). *Yahoo* cites *Orgill* and attempts to analogize, arguing that like the manufacturer in *Orgill*, Evox "intended" and "wanted" AOL to use the photos. *See* Def.'s Br. at 14. But the comparison is not persuasive. To the extent that Evox hoped AOL was continuing to use the photos, it was only so that Evox could sue AOL and win damages. Evox had no other business reason that it would benefit from AOL's use of the photos. The facts here do not show any conduct or underlying facts suggesting Evox benefited from AOL's use and intended to authorize it.

Despite the opportunity to provide further briefing, Yahoo has pointed to no cases where an implied license was found based on gathering evidence for litigation and waiting to sue. Many of the cases Yahoo cites are not binding on this Court, but even if they were, they do not lead to the conclusion that an implied license was intended. Evox's failure to warn Yahoo of possible infringement cannot be interpreted by Yahoo as consent to use the photos, and no precedent would support such an interpretation.

Yahoo argues repeatedly that silence and failure to object may create an implied license. *See, e.g.*, Def.'s Br. at 1, 13. As the cases above show, this broad principle is correct on certain fact patterns. But no precedent shows that mere knowledge of infringement and failure to promptly object, absent other facts, is sufficient to show the intent to create an implied license.

Yahoo can point to no conduct by Evox that suggested to Yahoo that Evox intended to allow use of the photos. Yahoo can only point to Evox's decision not to notify Yahoo of infringement while Evox gathered evidence and considered suit, and Evox's purported breach of contract in doing so. Even if Yahoo's reading of this disputed contract term were correct, and the term required Evox to inform AOL of possible claims by Evox, Evox's failure to inform Yahoo would not be sufficient to create an implied license. This purported breach of contract might be relevant to some other issues, but no precedent suggests it would create an implied license.

Yahoo points to other facts that purportedly show that Evox wanted AOL to continue using the images after the agreement, but this argument flies in the face of common sense. *See* Def.'s Br. at 16. For example, Yahoo notes that the license agreement allowed AOL to keep copies of images

after the agreement ended, and that it could instead have required AOL to delete the images. *See id.* But the contract plainly required AOL to cease use of the images, and the term allowing maintaining copies for "auditing and documentation" appears intended to help AOL ensure it does *not* use them. *See* MSJ Order at 9. This does not show any intent by Evox to allow AOL to continue publicly displaying the images. Yahoo also notes that the agreement did not preclude subsequent agreements after it ended, including implied license agreements. *See* Def.'s Br. at 16–17. But this does not show any intention to actually create a later implied license agreement. In sum, no conduct by Evox suggests an intent to create an implied license.

Finally, Yahoo notes that no "on point authority foreclose[es]" a finding of implied license here, and thus argues that the jury should be permitted to consider the issue. Def.'s Br. at 18. This is not persuasive. These facts simply do not support a finding of implied license, and a review of relevant authorities clearly shows that some level of intent to create an implied license is required to create one. *See Asset Mktg. Sys.*, 542 F.3d 755 (intent that the other party "copy and distribute" the work is part of the analysis of implied license for commissioned works); *Montwillo*, 632 F. Supp. 2d at 924 (examining totality of circumstances to determine if there was intent to create an implied license); *Interscope Recs.*, 2010 WL 11505708 at *3 (similar).

The Court finds that the undisputed facts lead to the conclusion that the parties did not intend to create an implied license, and therefore that no implied license was created. No reasonable juror could find otherwise. Accordingly, the Court will grant summary judgment to Evox on the issue of implied license.

### B. Partial Summary Judgment as to a Select Number of Images

Yahoo sought partial summary judgment as to 274,162 images based on its expert's report that no more than 7,559 images could have been viewed by two or more people between February and June of 2017. As explained in the MSJ Order, this figure relies on an incorrect legal and factual inquiry. MSJ Order at 40–41. However, the Court provided both parties with an opportunity to submit further briefing as to why the Court should not grant summary judgment to Yahoo on a smaller portion of images, pursuant to Federal Rule of Civil Procedure 56(f). Having reviewed the

briefing, the Court finds there is a genuine dispute of material facts and, thus, declines to grant summary judgment.

         i. *Perfect 10*, *Bell*, and *Hunley*

The majority of the parties' Motions for Summary Judgment addressed two issues presented by Yahoo: (1) an alleged conflict within Ninth Circuit copyright jurisprudence; and (2) an alleged requirement that the Court *must* apply the Copyright Act's Transmit Clause—and *may not* apply its Public Place Clause—in analyzing Yahoo's alleged infringement. As explained in much greater detail in the Court's MSJ Order, the Court found both of these arguments unpersuasive. The Court only revisits that discussion insofar as it is necessary to resolve the present dispute.

The Ninth Circuit's copyright jurisprudence regarding the public display of digital images has consistently applied the "server test"—first in the context of search-engines, then websites, and most recently the method of embedding. Under the server test, "a computer owner that stores an image as electronic information and serves that electronic information directly to the user ('i.e., physically sending ones and zeroes over the [I]nternet to the user's browser') is displaying the electronic information in violation of a copyright holder's exclusive display right." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159 (9th Cir. 2007) (internal and external citations omitted). "Conversely, the owner of a computer that does not store and serve the electronic information to a user is not displaying that information[.]" *Id.* Applying this test, the court held that Google "displayed" thumbnail versions of Perfect 10's images that Google stored on its servers and served to others but did not display full-sized versions because third parties stored and served those images. *Id.* at 1160–61. The court based its reasoning on the plain language of the Copyright Act, which states: (1) to "display" an image means "to show a copy of it"; (2) "copies" are "material objects … in which a work is fixed"; and (3) "[a] work is 'fixed' in a tangible medium of expression when its embodiment in a copy … is sufficiently permanent or stable[.]" *Id.* at 1160 (citing 17 U.S.C. § 101). A photographic image is a work that is " 'fixed' in a tangible medium of expression," for purposes of the Copyright Act, "when embodied (i.e., stored) in a computer's server (or hard disk or other storage device)." *Id.* In other words, the server test—in requiring that an infringer store a digital image—merely enforces the Copyright Act's "fixation" requirement.

"Applying the reasoning of *Perfect 10*" outside the search-engine context, the Ninth Circuit found that the server test might be satisfied without proof of actual viewership—what some have termed the "making available" theory.[6] *Bell v. Wimott Storage Services, LLC*, 12 F.4th 1065, 1072–1073 (9th Cir. 2012). In *Bell,* plaintiff photographer sued defendant website over its use of his photograph, which was not directly shown on the website, but discovered by plaintiff after conducting a reverse Google Image Search. *Id.* at 1073. Because it was "undisputed" that the infringing image was stored on defendant's server, which was continuously transmitting the image to those who used a reverse image search or the specific Internet pinpoint address, defendant displayed the image. *Id.* at 1073. Moreover, by displaying the photo on a server that was "publicly accessible to anyone with an Internet connection" the court held defendant displayed the image "publicly," regardless of whether any person in particular found and viewed it. *Id.* at 1074.

Yahoo argues the Ninth Circuit has recently confirmed that *Bell* is at odds with *Perfect 10* and forecloses this Court's previous ruling. *Hunley v. Instagram, LLC,* --- F.4th ---, 2023 WL 4554649 (9th Cir. July 17, 2023). *Hunley* answered the question of whether the public display right is violated when a third-party website embeds social-media users' content.[7] Plaintiff photographers sued *BuzzFeed News* and *Time*, whose websites embedded plaintiffs' Instagram images, which Instagram was itself authorized to display. *Hunley,* 2023 WL 4554649 at *3. First, the court

---

[6] As stated in its order, the Court notes that *Zillow* did not "embrace" the making available theory. MSJ Order at 36 (discussing *Zillow Group, Inc.,* 918 F.3d 723, 736-737 (9th Cir. 2019)). However, for the reasons stated in the MSJ Order, the Court finds *Zillow* distinguishable from *Bell* and, to the extent that it disclaimed the making available theory, not binding on this Court. *In re Osborne,* 76 F.3d 306, 309 (9th Cir. 1996) (one panel of the Ninth Circuit may not overrule a decision of a previous panel).

The Court also notes, as Yahoo does, that Evox has been inconsistent as to whether it pursues a making available theory. *See e.g.*, MSJ at 35 ("Although Evox may have cited to *Bell* in the context of other motions in this and other courts, the 'making available' theory of copyright infringement that *Bell* could potentially support is not currently before this Court."). However, the Court finds *Bell* is consistent with the Ninth Circuit's application of the server test and binding authority. Therefore—to the extent necessary to resolve the motions for summary judgment—the Court applies *Bell* to the facts here.

[7] As explained in *Hunley*, embedding is a method that allows a third-party website (the embedding website) to incorporate content directly from the website where it originally appeared (the host website). The embedding website does this by providing Hypertext Markup Language ("HTML") instructions directing a user's browser to retrieve and display an image dored on the host website's server. *Hunley,* 2023 WL 4554649 at *2–3. In other words, an embedding website can show an image that is *not* stored on its own server.

12

confirmed that the Copyright Act's "fixation" requirement supports *Perfect 10's* server test. *Id.* at *6 ("[A]n image is 'fixed in a tangible medium of expression' when it is 'embodied (i.e. stored) in a computer's server (or hard disk or other storage device)....' This requirement … has come to be known as the 'Server Test.' "). Because the images were stored on Instagram's server—rather than *BuzzFeed*'s and *Time*'s respective servers—the court found, under the server test, *BuzzFeed* and *Time* did not infringe plaintiff's copyright in the images. *Id.* at *12.[8]

*Hunley* does not create or confirm any conflict between *Perfect 10* and *Bell.* Rather, it simply states—as this Court stated in the MSJ Order—that *Bell* merely "*applied the Server Test* outside the search-engine context." *Hunley,* 2023 WL 4554649 *7 (citing to *Bell* as well as Ninth Circuit cases applying the server test to blogs and online bulletin boards) (emphasis added by this Court). In fact, *Hunley* only discusses *Bell* insofar as it supports the conclusion that *Perfect 10* is "not limited … to search engines." *Id.* at *8 ("The application of the Server Test depends on the *method used* for displaying a photo—not the *context* in which the photo is displayed.") (emphasis added by the *Hunley* court). *Hunley* noted nothing exceptional about *Bell*'s application of the server test, consistent with this Court's analysis of *Perfect 10* and *Bell.*

Yahoo makes much of *Hunley*'s discussion of the Transmit Clause. *Id.* at *6. ("[A]n internet communication of an image necessarily implicates the Transmit Clause…. In sum, infringing the exclusive right of public display requires the transmission of a display."). Yahoo argues this, along with *Hunley's* "interpretation" of *Bell* means that infringement only occurs when an image is "transmitted from the server to a user's computer screen." Def.'s Br. at 10. First, as discussed above, *Hunley* hardly "interpreted" *Bell.* It merely referred to it as part of an undisputed and consistent copyright jurisprudence. Second, the court preceded the quoted statement with a discussion of the Copyright Act's 1976 amendments which "clarified that the public display right can *also* be infringed by transmission." *Id.* at *5 (emphasis added by this Court). Although *Hunley* addresses the application of the Transmit Clause, it does not hold that only the Transmit Clause applies in this

---

[8] Because *BuzzFeed* and *Time* were not guilty of direct infringement, plaintiffs' claim of infringement based on secondary liability against Instagram also failed. *Hunley,* 2023 WL 2023 WL 4554649 at *12.

13

context. This Court's ruling on summary judgment—namely, that there is scant support for the view that *only* the Transmit Clause applies—remains undisturbed by *Hunley*.

*Hunley* also does not disturb the Court's previous finding that "*Bell* is on all fours with the case before the Court and requires that this Court find that Evox's exclusive right to publicly display its work was violated if [Yahoo] displayed the images on a server that was accessible to the Internet—regardless of whether any viewer actually viewed them." MSJ Order at 35.

### ii. Del Monte's Reports

The Court notified the parties of its intent to grant partial summary judgment as to 248,783 of the images because it found Evox had presented evidence that, at best, showed that, at most, 32,938 images were viewable during the relevant timeframe. Upon reviewing the parties' briefing and, in light of this Court's holding that *Bell* is controlling law, the Court finds the record demonstrates that a genuine dispute of material fact exists as to how many images were viewable (i.e., accessible to anyone with an internet connection) between the relevant timeframe.

There are three relevant findings, as to the issue of how many Evox images were viewable on Yahoo's servers between February of 2017 and August of 2017: (1) Michael Del Monte's non-expert 2017 report states that **299,507 images were *viewable*** in June of 2017; (2) Michael Del Monte's non-expert 2022 report states **32,938 images were *viewed*** between February and August of 2017; and (3) David Kalat's expert report states **28,358 images were *viewable*** between February and August of 2017. *See* ECF No. 144-2 ("Def.'s MSJ App'x"), Samplin Decl., Ex. 19 ("Del Monte 2017 Report"), Ex. 20 ("Del Monte 2022 Report") and Ex. 28 ("Kalat Report"); *see also* ECF No. 144-3 ("Pl.'s MSJ App'x"), Casero Decl., Ex. E ("Del Monte Depo."). Ultimately, the Court finds that all three reports create a genuine dispute of material fact and denies Evox's request that the Court grant summary judgment based on the Del Monte 2017 Report, as well as Yahoo's request that it grant summary judgment based on the Kalat Report.

Originally, Yahoo requested that the Court grant partial summary judgment as to 274,162 images based on another finding of the Kalat Report—namely, that no more than 7,559 images could have been viewed by two or more people between February of 2017 and June of 2017. MSJ at 16. This request was premised on Yahoo's legal argument that infringement only occurs if an image is

displayed to two or more people and its factual argument that Yahoo's server was indisputably disconnected from the internet in June of 2017. The Court rejected this and ultimately determined the relevant inquiry is whether the images were *viewable* (stored and served to the public) between February of 2017 and August of 2017.

In its MSJ Order—assessing whether Evox had produced enough evidence to create a genuine dispute of material fact, as to Yahoo's claim that *no more* than 7,559 images *could* have been viewed—the Court found that Evox produced evidence, demonstrating that 32,938 images *had* been viewed (and potentially, therefore, evidence that 248,783 images had *not* been viewed). MSJ Order at 40. In their Rule 56(f) briefing, the parties address the Court's question as to why it should not grant partial summary judgment, in favor of Yahoo, on that last category of images (the images *not* viewed). The Court finds such judgment is not appropriate.

First, the Court notes Yahoo's evidentiary objections to the Del Monte Reports. *See generally* Def.'s Br. at 14–17. Yahoo is correct that, in deciding whether to grant summary judgment, the Court need not "comb the record" looking for evidence and it is only required to consider evidence set forth in the moving and opposing papers and the portions of the records cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001). However, this does not prohibit the Court from reviewing the complete record. Moreover, on a motion for summary judgment, the court is concerned only with the admissibility of the relevant facts, and not the form of these facts. Fed. R. Civ. P. 56(c)(2). In fact, the Court has already denied Yahoo's request to exclude Del Monte's *testimony* and has not wholly foreclosed the possibility that the 2017 and 2022 *reports* themselves may be admissible. *See* ECF No. 251 (ruling on Yahoo's Motions in Limine Nos. 7 and 10). Thus, his reports are appropriate to consider in this proceeding. [9]

Second, the Court agrees with Evox that the 2017 Del Monte Report—while relevant—is not determinative to the assessment of how many images were *viewable* between February and August of

---

[9] Yahoo repeatedly states that the Court indicated its intent to exclude certain of Del Monte's reports, implying that Evox cannot present the testimony of Del Monte. Quite to the contrary. It is well-settled that an expert witness's report may be excluded as inadmissible hearsay, but the expert is still permitted to testify as to the substance of the expert witness's conclusions and may have the expert witness's recollection refreshed with the report as appropriate. The report itself, though, is typically not admitted, and therefore not provided to the jury during its deliberations.

2017. The inverse of how many images were definitively *viewed*, is not necessarily the same figure as how many images were *not viewable*. Thus, in light of this Court's finding that *Bell* applies, the 2017 Del Monte Report does not provide a sufficient basis for partial summary judgment.

Finally, the two remaining reports that claim to have identified the *viewable* images create a genuine dispute of material fact. The substantial disparity between their findings alone gives the Court pause. The Del Monte 2022 Report claims that nearly 300,000 images were viewable in June, whereas the Kalat Report found less than 30,000 images were viewable between February and August of 2017. A reasonable juror could credit either expert, with quite disparate results.

Upon reviewing the parties' briefing and, in light of this Court's holding that *Bell* is controlling law, the Court finds the record demonstrates that a genuine dispute of material fact exists as to how many images were viewable (i.e., accessible to anyone with an internet connection) between February of 2017 and August of 2027. Therefore, the Court declines to grant summary judgment as to any select number of images.

## IV.   Conclusion

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Summary judgment is granted to Evox as to the question of whether Evox granted an implied license.

   IT IS SO ORDERED.

Dated: July 28, 2023

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge